IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CHURCH MUTUAL INSURANCE
COMPANY, S.I.,

    Plaintiff/Counter-Defendant,

v.

                                                                                                                Case 1:24-cv-00090-MIS-SCY

CHABAD OF NEW MEXICO,

    Defendant/Counter-Claimant.

**ORDER DENYING DEFENDANT'S MOTION TO OVERRULE CHURCH MUTUAL'S CLAIM OF ATTORNEY-CLIENT PRIVILEGE AS TO THREE SENTENCES IN ITS CLAIMS ADJUSTER'S REPORT**

THIS MATTER is before the Court on Defendant Chabad of New Mexico's Motion to Overrule Church Mutual's Claim of Attorney-Client Privilege as to Three Sentences in its Claims Adjuster's Report, filed under seal on December 20, 2024. ECF No. 35 ("Motion"). Plaintiff Church Mutual Insurance Company, S.I. ("Church Mutual") filed a Response under seal on January 9, 2025, ECF No. 39 ("Response"), to which Defendant ("Chabad") filed a Reply under seal on January 14, 2025, ECF No. 43 ("Reply"). Upon review of the Parties' submissions, the record, and the relevant law, the Court will DENY the Motion.

**I.**     **Background**

On December 28, 2022, there was an act of arson committed on real property owned by Chabad in Rio Rancho, New Mexico. Compl. ¶ 8, ECF No. 1. On March 5, 2023, there was a second act of arson committed on the same property owned by Chabad. Id. ¶ 9. Chabad made property claims for both fires under an insurance policy ("Policy") issued by Church Mutual. Id. ¶¶ 1, 10.

On December 12, 2023, Church Mutual's claims adjuster, Mitch Kies, submitted an eight-page report on the results of Church Mutual's investigation of Chabad's claims ("Report"). See ECF No. 43-1. Relevant here, the Report contains three sentences reflecting communications between Mr. Kies and "coverage counsel." Id. at 1, 3, 7 (Collectively, the "Coverage Counsel sentences.")

On January 29, 2024, Church Mutual instituted this diversity action, seeking a declaratory judgment that it owes no duty to cover Chabad's claims. See Compl. ¶¶ 1-6, ECF No. 1.

On March 25, 2024, Chabad filed an Answer to the Complaint and counterclaims for a declaratory judgment that Church Mutual owes coverage for Chabad's claims (Count I), breach of contract (Count II), insurance bad faith and violations of the New Mexico Insurance Code and Unfair Practices Act (Count III), and fraud and misrepresentation (Count IV). ECF No. 8.

In response to a discovery request, Church Mutual produced an unredacted version of Mr. Kies's Report to Chabad. See Mot. at 1-2, ECF No. 35. During Mr. Kies's deposition, counsel for Chabad questioned Mr. Kies about his Report. Id. at 2. During that deposition, counsel for Church Mutual, for the first time, raised an attorney-client privilege objection to the Report's three Coverage Counsel sentences, claiming that disclosure was inadvertent. Id.

On December 20, 2024, Chabad filed the instant Motion to Overrule Church Mutual's Claim of Attorney-Client Privilege as to the three Coverage Counsel sentences in Mr. Kies's Report. ECF No. 35. Church Mutual filed a Response, ECF No. 39, to which Chabad filed a Reply, ECF No. 43. The Parties filed their briefs under seal pursuant to Rule 26(b)(5)(B).[1]

---

[1] Pursuant to Federal Rule of Civil Procedure 26(b)(5)(B), if a party produces a document in discovery and then later raises a claim of privilege as to the document it produced, the party that received the document "may promptly present the information to the court under seal for a determination of the claim." The Court does not believe that this Order contains any privileged information.

**II.     Legal Standard**

"Unless otherwise limited by court order, . . . Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1) (emphasis added).

In diversity cases, issues related to the attorney-client privilege are governed by state law. Frontier Refin., Inc. v. Gorman-Rupp Co., Inc., 136 F.3d 695, 699 (10th Cir. 1998). See also Fed. R. Evid. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."). Here, New Mexico law governing the attorney-client privilege applies because the potentially privileged information is relevant to the counterclaims Chabad asserts under New Mexico law. See Frontier Refin., 136 F.3d at 699 (finding that Wyoming law governed the attorney-client privilege issues in a federal diversity case involving (apparently) only Wyoming state law claims); Wylie v. Marley Co., 891 F.2d 1463, 1471 (10th Cir. 1989) (finding that "Kansas law controls whether the attorney-client privilege is applicable" in a federal diversity case involving (apparently) only Kansas state law claims).

"The attorney-client privilege in New Mexico is expressly provided for and governed by New Mexico's Rules of Evidence." Allen v. LeMaster, 267 P.3d 806, 813 (N.M. 2011) (citing Rule 11-503, NMRA). The governing rule states that "[a] client has a privilege to refuse to disclose, and to prevent any other person from disclosing, a confidential communication made for the purpose of facilitating or providing professional legal services to that client[.]" Rule 11-503(B), NMRA. "Attorney-client privilege is an exception to the established principle that the public has a right to every man's evidence." S.F. Pac. Gold Corp. v. United Nuclear Corp., 175 P.3d 309, 315 (N.M. Ct. App. 2007) (quotation marks and citation omitted). "The elements of attorney-client privilege, as reflected in Rule 11-503(B), are (1) a communication (2) made in confidence (3)

3

between privileged persons (4) for the purpose of facilitating the attorney's rendition of professional legal services to the client." Id. "The party claiming privilege has the burden of establishing that a communication is protected as an exception to the ordinary rule." Id. (citation omitted).

### III. Discussion

Chabad argues that the entire Report prepared by Mr. Kies, including the Coverage Counsel sentences, is not protected by the attorney-client privilege because it "was prepared in the ordinary course of insurance business to help Church Mutual arrive at a claims decision." Mot. at 2, ECF No. 35. See also id. at 4 (discussing Barela v. Safeco Ins. Co. of Am., Civ. No. 13-1084 SMV/SCY, 2014 WL 11497826, at *4-5 (D.N.M. Aug. 22, 2014) (quoting Lindley v. Life Invs. Ins. Co. of Am., 267 F.R.D. 382, 399 (N.D. Okla. 2010)); id. at 5-6 (discussing Montoya v. Loya Ins. Co., CIV 18-0590 SCY/KBM, 2019 WL 430881, at *2 (D.N.M. Feb. 4, 2019)); id. at 9 (discussing Colo. Mills, LLC v. Phila. Indem. Ins. Co., Civil Action No. 12–cv–01830–CMA–MEH, 2013 WL 1340649, at *4 (D. Colo. Apr. 2, 2013)).

Church Mutual does not dispute that the claims adjuster's Report is discoverable, but argues that the three Coverage Counsel sentences are protected by the attorney-client privilege. Resp. at 1, ECF No. 39. It argues that the Coverage Counsel sentences "were the legal opinions and legal advice of outside counsel given to a client[,]" id. at 2, such communications "'are presumed to be made for the purpose of seeking legal advice[,]'" id. at 3 (quoting United States v. ChevronTexaco Corp., 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2002)), and "[t]he sentences in question are black letter law examples of attorney-client communications, which are privileged under New Mexico law[,]" id. It argues that although the Report itself was not communicated between an attorney and a client, the Coverage Counsel sentences are nevertheless privileged

4

because they "'memorialize[] and reflect[] legal advice rendered in a privileged conversation.'" Id. (quoting Baxter Healthcare Corp. v. Fresenius Med. Care Holding, Inc., No. C 07–1359 PJH (JL), 2009 WL 533124, at *1 (N.D. Cal. Mar. 3, 2009)). It argues that "documents in whatever form discussing attorney client communications are protected by the privilege." Id. (citing Lindley, 267 F.R.D. at 402; United States v. DeFonte, 441 F.3d 92 (2d Cir. 2006); Alexander v. F.B.I., 186 F.R.D. 154, 161 (D.D.C. 1999); Royal Surplus Lines Ins. Co. v. Sofamor Danek Grp., Inc., 190 F.R.D. 505, 515 (W.D. Tenn. 1999); United States v. Motorola, Inc., No. Civ.A.94–2331TFH/JMF, 1999 WL 552553, at *5 (D.D.C. May 28, 1999)). Church Mutual argues that the cases Chabad relies upon are distinguishable and inapposite because they involve insurance companies claiming entire documents were privileged, not specific attorney-client communications within the documents. Id. at 5-7. It further argues that, in fact, Barela and Lindley both appear to support Church Mutual's position. Id. at 5-6. As to Barela, Church Mutual asserts that although the court found that the requested documents were not themselves privileged, it also found that many of the plaintiff's requests sought information subject to attorney-client privilege and ordered the defendant to produce a privilege log. Id. at 5-6 (discussing Barela, 2014 WL 11497826, at *4-5). As to Lindley, Church Mutual argues that the court "did in fact declare privileged all communications without [sic] outside counsel contained in the subject claims folder/documents for the purposes of seeking legal advice." Id. (discussing Lindley, 267 F.R.D. at 402-03). More importantly, argues Church Mutual, the Lindley Court found "that the subject coverage analysis report was privileged." Id. at 7 (citing Lindley, 267 F.R.D. at 404).

In its Reply, Chabad maintains that the entire Report prepared by Mr. Kies, including the Coverage Counsel sentences, is not protected by the attorney-client privilege because it "was prepared in the ordinary and regular course of the claims handling of an insurance company

5

handling a claim . . . before Church Mutual made a coverage decision, to help Church Mutual arrive at a decision on Chabad's claims" and "documents Church Mutual's handling of Chabad's claims." Reply at 1, ECF No. 43. See also id. at 3-4. Chabad further argues that "[i]nsurance companies cannot invoke the attorney-client privilege to evade their duty of disclosure about coverage available to their insured." Id. at 4. Chabad argues that the attorney-client privilege does not apply because "[t]he Claims Adjuster was not 'seeking representation'" and "[t]he attorney was not an 'advocate' at that stage." Id. at 5. It argues that "the Adjuster and lawyer he consulted need to be working for Insured Chabad at least as much as they are working for Church Mutual" prior to making a claims decision. Id. Chabad argues that the Coverage Counsel sentences in Mr. Kies's Report constitute "claims handling advice given by a 'vendor' attorney to a claims adjuster who was making an insurance decision, deciding whether an insured has coverage." Id. See also id. at 8-9. It argues that "[i]nsurance companies cannot claim attorney-client privilege when they use attorneys to help with claims handling." Id. at 6.

Initially, the Court finds that Chabad's argument—i.e., that attorney-client communications are not privileged when made in the ordinary and regular course of claims handling to reach a claims decision—conflates the standard governing the work-product privilege with the standard governing the attorney-client privilege. "Unlike the attorney client privilege, the work product privilege is governed, even in diversity cases, by a uniform federal standard embodied in Fed.R.Civ.P. 26(b)(3) . . . ." Frontier Refin., 136 F.3d at 702 n.10 (quotation marks and citation omitted). The work-product privilege protects "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney . . . )" unless those materials "are otherwise discoverable under Rule 26(b)(1)" and "the party shows that it has substantial need for the materials to prepare its case and

6

cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A). "'The courts have adopted a nuanced approach to the anticipation-of-litigation prong of work-product analysis' and focus on 'whether specific materials were prepared in the ordinary course of business, or were principally prompted by the prospect of litigation.'" Barela, 2014 WL 11497826, at *4 (quoting 8 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure § 2024 (3d ed.)). Specifically,

> Fed. R. Civ. P. 26(b)(3) requires that a document or thing produced or used by an insurer to evaluate an insured's claim in order to arrive at a claims decision in the ordinary and regular course of business is not work product regardless of the fact that it was produced after litigation was reasonably anticipated. It is presumed that a document or thing prepared before a final decision was reached on an insured's claim, and which constitutes part of the factual inquiry into or evaluation of that claim, was prepared in the ordinary and routine course of the insurer's business of claim determination and is not work product. Likewise, anticipation of litigation is presumed unreasonable under the Rule before a final decision is reached on the claim. The converse, of course, is presumed for documents produced after claims denial. To overcome these presumptions, the insurer must demonstrate, by specific evidence proof of objective facts, that a reasonable anticipation of litigation existed when the document was produced, and that the document was prepared and used solely to prepare for that litigation, and not to arrive at a (or buttress a tentative) claim decision.

Id. (quoting Lindley, 267 F.R.D. at 399). Here, however, Church Mutual has not asserted work-product privilege, and therefore this standard does not apply.

Although Chabad argues that "courts have routinely applied a rebuttable presumption 'that neither attorney work product nor attorney-client privilege protects an insurer's investigatory file on an insured's claim from discovery before a final decision is made' as to that claim[,]" Mot. at 4, ECF No. 35 (quoting Barela, 2014 WL 11497826, at *4 (quoting AKH Co., Inc. v. Universal Underwriters Ins. Co., 300 F.R.D. 684, 688 (D. Kan. 2014)), Chabad cites no New Mexico state court cases applying such a presumption in the attorney-client privilege context. And this Court declines to read such a rebuttable presumption into New Mexico's attorney-client privilege.

7

Rather, what is relevant here is whether the Coverage Counsel sentences in Mr. Kies's Report reflect "(1) a communication (2) made in confidence (3) between privileged persons (4) for the purpose of facilitating the attorney's rendition of professional legal services to the client"—which are the elements of attorney-client privilege under New Mexico law. S.F. Pac. Gold, 175 P.3d at 315. The Court finds that the Coverage Counsel sentences clearly satisfy these elements and, as such, are protected by the attorney-client privilege.[2]

## IV. Conclusion

Therefore, it is HEREBY ORDERED that Chabad's Motion to Overrule Church Mutual's Claim of Attorney-Client Privilege as to Three Sentences in its Claims Adjuster's Report, ECF No. 35, is **DENIED**.

*Margaret Strickland*
**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE

---

[2] However, the Court notes that the Coverage Counsel sentences are clearly relevant to Chabad's claims and may become admissible if, for example, Church Mutual waives the privilege. See United States v. Bernard, 877 F.2d 1463, 1465 (10th Cir. 1989) ("Courts need not allow the claim of attorney-client privilege when the party claiming the privilege is attempting to utilize the privilege in a manner that is not consistent with the privilege.").