IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CHURCH MUTUAL INSURANCE
COMPANY, S.I.,

    Plaintiff/Counter-Defendant,

v.

                                                                                             Case 1:24-cv-00090-MIS-SCY

CHABAD OF NEW MEXICO,

    Defendant/Counter-Claimant.

**ORDER GRANTING CHABAD OF NEW MEXICO'S MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF COVERAGE AND DENYING IN PART AND DEFERRING RULING IN PART ON CHURCH MUTUAL INSURANCE COMPANY'S CORRECTED CONSOLIDATED MOTION FOR SUMMARY JUDGMENT**

THIS MATTER is before the Court on Defendant Chabad of New Mexico ("Chabad")'s Motion for Summary Judgment on the Issue of Coverage ("Chabad's Motion"), ECF No. 59, filed August 1, 2025. Plaintiff Church Mutual Insurance Company ("Church Mutual") filed a Response on August 22, 2025 ("Church Mutual's Response"), ECF No. 69, to which Chabad filed a Reply on September 5, 2025 ("Chabad's Reply"), ECF No. 77.

Also before the Court is Church Mutual's Corrected Consolidated Motion for Summary Judgment ("Church Mutual's Motion"), ECF No. 65, filed August 14, 2025. Chabad filed a Response on August 22, 2025 ("Chabad's Response"), ECF No. 71, to which Church Mutual filed a Reply on September 11, 2025 ("Church Mutual's Reply"), ECF No. 81.

Upon review of the Parties' submissions, the record, and the relevant law, the Court will **GRANT** Chabad's Motion, and **DENY IN PART and DEFER RULING IN PART** on Church Mutual's Motion.

I.  **Undisputed Facts**[1]

Chabad is a Jewish organization that provides educational and social programs. Pl.'s Facts ¶ 3; Def.'s Resp. Facts ¶ 3. On June 2, 2022, Church Mutual issued Chabad Policy No. 0229935-02-409288 ("Policy") which insured a building and personal property Chabad owned at 2009 Grande Blvd. SE in Rio Rancho, New Mexico ("Property"). Pl.'s Facts ¶ 1; Def.'s Facts ¶ 1; Def.'s Resp. Facts ¶ 1; Pl.'s Resp. Facts ¶ A. The Policy's "Building and Personal Property Coverage Form" states, in part: "We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations Page caused by or resulting from any Covered Cause of Loss." Def.'s Facts ¶ 4; Pl.'s Resp. Facts ¶ D.[2] The Policy contains a loss condition for "Vacancy," which states, in relevant part:

> If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage, we will:
>
> a.  Not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:
>
>   (1)  Vandalism;
>
> . . .
>
> A building is vacant when it does not contain enough of your personal property to conduct customary operations. . . .

---

[1] The following facts are gleaned from Chabad's Statement of Undisputed Material Facts ("Def.'s Facts"), ECF No. 59 at 3-5; Church Mutual's Response to Chabad's Statement of Undisputed Facts ("Pl.'s Resp. Facts"), ECF No. 69 at 2-5; Church Mutual's Additional Undisputed Facts ("Pl.'s Add'l Facts"), id. at 5-7; Church Mutual's Statement of Material Undisputed Facts ("Pl.'s Facts"), ECF No. 65 at 2-7; Chabad's Response to Church Mutual's Statement of Material Undisputed Facts, ("Def.'s Resp. Facts"), ECF No. 71 at 3-5; and Chabad's Statement of Additional Facts Which Chabad Contends are Material to Resolution of Church Mutual's Motion for Summary Judgment, id. at 5-8. All facts are undisputed unless otherwise indicated.

[2] Church Mutual purports to dispute this fact because it "provides only a small snapshot of the policy and makes the conclusory allegation that except for exclusions in the policy, Church Mutual is obligated to pay[,]" which "is a gross over-simplification of the policy." Pl.'s Resp. Facts ¶ D. However, Church Mutual does not, and cannot, genuinely dispute that Chabad correctly quoted the Policy's "Building and Personal Property Coverage Form," see Policy, ECF No. 1-1 at 57, and therefore the Court deems this fact undisputed. See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

Pl.'s Facts ¶ 2; Def.'s Resp. Facts ¶ 2; Def.'s Facts ¶ 8; Pl.'s Resp. Facts ¶ C.

On December 28, 2022, and March 5, 2023—while the Policy was in effect—acts of arson were committed at the subject Property. Def.'s Facts ¶¶ 2-3; Pl.'s Resp. Facts ¶¶ A, C.[3] Chabad submitted property damage claims after both fires. See Pl.'s Facts ¶¶ 17, 20; Def.'s Resp. Facts ¶¶ 17, 20. Church Mutual assigned Claims Adjuster Mitch Kies to investigate and handle Chabad's property damage claims. Def.'s Facts ¶ 6; see also Pl.'s Resp. at 17;[4] Kies Report at 1, ECF No. 59-1 at 1. Mr. Kies submitted a Report stating that his "investigation revealed that while the building was not actively being used, there remained sufficient contents in the structure for the Insured to continue their normal operations." Def.'s Facts ¶ 10; Pl.'s Resp. Facts ¶ D.[5] To date, Church Mutual has not provided coverage for Chabad's claims. Def.'s Facts ¶ 7; Pl.'s Resp. Facts ¶ D.

## II.    Procedural History

On January 29, 2024, Church Mutual instituted this diversity action, seeking a declaratory judgment that it owes no duty to cover Chabad's claims because the property was "vacant" for

---

[3] Church Mutual admits that in December 2022 and March 2023, "fires occurred on the Property." Pl.'s Resp. Facts ¶ C. It does not explicitly dispute that arson was the cause of the fires. See id. And, in fact, Church Mutual's Response to Chabad's Motion for Summary Judgment characterizes the Parties' dispute as "whether insurance coverage exists for two fires caused by vandalism/arson on Chabad's" property. ECF No. 69 at 1 (emphasis added). And Church Mutual's Complaint explicitly alleges that the December 28, 2022 and March 5, 2023 fires were "act[s] of arson." ECF No. 1 ¶¶ 8-9. Nowhere does Church Mutual argue or assert that the fires were caused by anything other than arson. Because Church Mutual does not specifically controvert the assertion that acts of arson caused the fires, the Court deems this fact undisputed. See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

[4] Church Mutual did not address this fact in its Response to Chabad's Statement of Undisputed Facts, and therefore the Court deems it undisputed pursuant to Federal Rule of Civil Procedure 56(e)(2) and the District's Local Rule of Civil Procedure 56.1(b). Regardless, Church Mutual acknowledges in its Response to Chabad's Motion for Summary Judgment that Mr. Kies was the claims adjuster assigned to Chabad's claims. Resp. at 7.

[5] Although Church Mutual purports to dispute this fact as "a small snapshot of a document outside of context," Pl.'s Resp. Facts ¶ D, it does not, and cannot, genuinely dispute that Chabad accurately quoted Mr. Kies's Report, see id.; Kies Report at 3, ECF No. 59-1 at 2. As such, the Court deems this fact undisputed.

more than sixty consecutive days before the acts of arson, and therefore no coverage is owed pursuant to the Policy's "Vacancy" loss condition.  See Compl. ¶¶ 1-6, 12-23, ECF No. 1.

On March 25, 2024, Chabad filed an Answer to the Complaint and counterclaims for a declaratory judgment that Church Mutual owes coverage for Chabad's claims (Count I), breach of contract (Count II), insurance bad faith and violations of the New Mexico Insurance Code and Unfair Practices Act (Count III), and fraud and misrepresentation (Count IV).  ECF No. 8.

On August 1, 2025, Chabad filed its Motion for Summary Judgment on the Issue of Coverage.  ECF No. 59.  Church Mutual filed a Response, ECF No. 69, to which Chabad filed a Reply, ECF No. 77.

On August 14, 2025, Church Mutual filed its Corrected Consolidated Motion for Summary Judgment, seeking summary judgment on the issue of coverage and Chabad's counterclaims.  ECF No. 65.  Chabad filed a Response, ECF No. 71, to which Church Mutual filed a Reply, ECF No. 81.

### III. Legal Standard

Rule 56 of the Federal Rules of Civil Procedure allows a court to grant summary judgment when the evidence submitted by the parties establishes that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the movant meets this burden, the nonmovant is required to point the court to record evidence of facts showing that there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-52 (1986).  A fact is "material" if under the substantive law it is essential to the proper disposition

of the claim. Id. at 248. "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998).

The nonmoving party cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment. See Pueblo Neighborhood Health Ctrs., Inc. v. Losavio, 847 F.2d 642, 649 (10th Cir. 1988). Rather, the nonmovant must "go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [their] case in order to survive summary judgment." Johnson v. Mullin, 422 F.3d 1184, 1187 (10th Cir. 2005) (quoting McKnight v. Kimberly Clark Corp., 149 F.3d 1125, 1128 (10th Cir. 1998)).

It is not the court's role to weigh the evidence or assess the credibility of witnesses in ruling on a motion for summary judgment. See Daniels v. United Parcel Serv., Inc., 701 F.3d 620, 627 (10th Cir. 2012), abrogated on other grounds by Muldrow v. City of St. Louis, 601 U.S. 346, 355 (2024). Rather, the court resolves all doubts against the movant, construes all admissible evidence in the light most favorable to the nonmovant, and draws all reasonable inferences in favor of the nonmovant. See Hunt v. Cromartie, 526 U.S. 541, 551-52 (1999); see also Garrison v. Gambro, Inc., 428 F.3d 933, 935 (10th Cir. 2005). However, summary judgment may nevertheless be granted where "the evidence is merely colorable, or is not significantly probative." Liberty Lobby, 477 U.S. at 249-50 (internal citations omitted).

**IV.    Discussion**

Chabad argues that Church Mutual owes coverage for both fires under the plain language of the Policy. Specifically, it argues that the Property was not vacant under the Policy's "Vacancy" provision because the building contained enough personal property to conduct Chabad's customary operations. See Chabad's Mot. at 6-24; Chabad's Reply at 1-12; Chabad's Resp. at 8-22.

5

Church Mutual argues that the Policy's "Vacancy" provision precludes coverage for both fires. First, it argues that the Property was vacant prior to both fires because Chabad was simply storing personal property there and had not used the Property for its "customary operations" since at least September 2021. Church Mutual's Resp. at 8-12; Church Mutual's Mot. at 9-13; Church Mutual's Reply at 2-7. Alternatively, Church Mutual argues that no coverage is owed for damages caused by the March 2023 fire because "the majority of the tables and chairs stored at the Property were irreparably damaged in the December 2022 fire" and the remaining personal property was insufficient for Chabad to conduct its "customary operations" thereafter. Church Mutual's Mot. at 14.[6]

Chabad argues that the evidence establishes that the Property was not vacant under the Policy's "Vacancy" provision before or after the December 2022 fire. Chabad's Resp. at 21-22.

In diversity cases, like this one, the substantive law of the forum state—here, New Mexico—governs the analysis of the underlying claims. Stickley v. State Farm Mut. Auto. Ins. Co., 505 F.3d 1070, 1076 (10th Cir. 2007).

The law of New Mexico imposes principles of insurance contract construction "that favor both the insured and the avowed purpose of insurance, the provision of coverage." Sanchez v. Herrera, 783 P.2d 465, 469 (N.M. 1989). "The obligation of the insurer is a question of contract law and will be determined by reference to the terms of the insurance policy." Knowles v. United Servs. Auto Ass'n, 832 P.2d 394, 396 (N.M. 1992). Accordingly, "policies that are not ambiguous and do not contravene public policy must be enforced as written." N.M. Physicians Mut. Liab.

---

[6] The Parties also argue whether Church Mutual is entitled to summary judgment on Chabad's counterclaims for breach of contract, bad faith, statutory violations, and punitive damages. See Church Mutual's Mot. at 14-25; Chabad's Resp. at 8-23; Church Mutual's Reply at 8-10. In this Order the Court limits its discussion to the issue of coverage and defers ruling on whether Church Mutual is entitled to summary judgment on Chabad's other counterclaims pending the completion of a settlement conference.

Co. v. LaMure, 860 P.2d 734, 737 (N.M. 1993).  However, ambiguous terms in insurance contracts should be liberally construed in favor of the insured.  Id.

Ambiguity exists if the contract language is "reasonably and fairly susceptible of different constructions." Sanchez, 783 P.2d at 469 (quoting Levenson v. Mobley, 744 P.2d 174, 176 (1987)); cf. United Nuclear Corp. v. Allstate Ins. Co., 285 P.3d 644, 648 (N.M. 2012) ("[A]n ambiguity does not exist merely because the parties hold competing interpretations about the meaning of a policy provision." (citation and quotation marks omitted)).  In resolving the ambiguity, "the test is not what the insurer intended its words to mean, but what a reasonable person in the insured's position would have understood them to mean." Phoenix Indem. Ins. Co. v. Pulis, 9 P.3d 639, 646 (N.M. 2000) (quoting W. Com. Bank v. Reliance Ins. Co., 732 P.2d 873, 875 (N.M. 1987)).  If the reviewing court is "alerted to an interpretation supporting coverage to which the language of the policy is reasonably susceptible and which does not violate public policy, [it] generally will construe the provision against the insurer and in favor of coverage." Comput. Corner, Inc. v. Fireman's Fund Ins. Co., 46 P.3d 1264, 1267 (N.M. Ct. App. 2002). To that end, "[i]t is unnecessary to show that a construction against the insurer is more logical than a construction against the insured, so long as both constructions are reasonable." United Nuclear Corp., 285 P.3d at 648 (citation and quotation marks omitted).

Here, the Parties agree that the Policy's "Vacancy" provision is unambiguous.  See Chabad's Mot. at 14-15; Church Mut. Mot. at 10; Chabad Resp. at 18.  The Policy's Building and Personal Property Coverage Form requires Church Mutual to provide coverage "for direct physical loss of or damage to [the Property] caused by or resulting from any Covered Cause of Loss." Policy, ECF No. 1-1 at 57.  Church Mutual appears to concede that fire and vandalism are Covered

7

Causes of Loss,[7] but argues that no coverage is owed pursuant to the "Vacancy" loss condition, which states, in relevant part:

> If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage, we will:
>
> a.  Not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:
>
>    (1)   Vandalism;
>
> . . .
>
> A building is vacant when it does not contain enough of your personal property to conduct customary operations. . . .

Policy, ECF No. 1-1 at 44-45; see also Pl.'s Facts ¶ 2; Def.'s Resp. Facts ¶ 2; Def.'s Facts ¶ 8; Pl.'s Resp. Facts ¶ C. The Court agrees with the Parties that this provision is unambiguous. Cf. Battishill v. Farmers Alliance Ins. Co., 127 P.3d 1111, 1116 (N.M. 2006) (holding that an exclusion for loss caused by "[v]andalism and malicious mischief if the dwelling has been vacant for more than 30 consecutive days immediately before the loss" was not ambiguous). Because this provision is unambiguous and does not contravene public policy, the Court must enforce it as written. See N.M. Physicians Mut. Liab. Co., 860 P.2d at 737.

As an initial matter, under New Mexico law the term "vandalism" in an insurance contract encompasses acts of arson. Battishill, 127 P.3d at 1112. And it is undisputed that the fires that damaged Chabad's Property were caused by acts of arson. See Def.'s Facts ¶¶ 2-3; Pl.'s Resp.

---

[7] Neither Party cites to the applicable definition of "Covered Causes of Loss." The Building and Personal Property Coverage Form's "Covered Causes of Loss" section simply states: "See the applicable Causes of Loss Form as shown in the Declarations Page." ECF No. 1-1 at 59. The Declarations Page, in turn, states: "COVERED CAUSE OF LOSS: SPECIAL." Id. at 9. The "Causes of Loss – Special Form" states: "When Special is shown in the Declarations Page, Covered Causes of Loss means Risks of Direct Physical Loss unless the loss is" subject to a specific exclusion or limitation. Id. at 81. The Definitions section of the "Causes of Loss – Special Form" does not define "Risks of Direct Physical Loss." See id. at 88. However, the definition of "Specified Causes of Loss" includes "fire" and "vandalism." Id.

8

Facts ¶¶ A, C; see also Note 3, supra. Thus, the only question before the Court is whether Chabad's building was "vacant" under the unambiguous terms of the Policy. The answer to that question is very obviously NO.

First, the Court rejects Church Mutual's argument that the Vacancy provision precludes coverage because Chabad was not using the Property for its customary operations. See Church Mutual's Mot. at 10-13 (citing Saiz v. Charter Oak Fire Ins. Co., 299 F. App'x 836, 839-40 (10th Cir. 2008); Travelers Cas. Ins. Co. of Am. v. Wild Waters, LLC, No. 2:12–cv–00481–CWD, 2013 WL 4710271, at *1, 6 (D. Idaho Aug. 30, 2013); Keren Habinyon Hachudosh D'Rabeinu Yoel of Satmar BP v. Phila. Indem. Ins. Co., 462 F. App'x 70 (2nd Cir. 2012); Oakdale Mall Assocs. v. Cincinnati Ins. Co., 702 F.3d 1119 (8th Cir. 2013); Congregation Bikur Cholim-Shevah Achim v. Selective Ins. Co., Dkt. No. CV-18-6076543-S (Conn. Super. June 28, 2022); JJD Assocs. of Palm Beach Ltd. v. Am. Empire Surplus Lines Ins. Co., No. 11-80247-CV, 2011 WL 5873061 (S.D. Fla. Nov. 22, 2011); Wilheit Fam. Props. L.P. v. Neth. Ins. Co., No. 2:11-CV-00300-WCO, 2013 WL 12291715, at *4 (N.D. Ga. Jan. 24, 2013); Sorema N. Am. Reinsurance Co. v. Johnson, 574 S.E.2d 377, 379 (Ga. Ct. App. 2002); Holmes v. N.C. Farm Bureau Mut. Ins. Co., Inc., 756 S.E.2d 848, 851-852 (N.C. Ct. App. 2014); Hollis v. Travelers Indem. Co. of Conn., No. 08-2350-STA, 2010 WL 1050991, at *9 (W.D. Tenn. Mar. 19, 2010)); see also Church Mutual's Reply at 2-7 (citing Augenstein v. Milbank Ins. Co., CIVIL ACTION NO. 1:23-CV-00094-GNS-HBB, 2025 WL 2432212, at *5 (W.D. Ky. Aug. 22, 2025)); Church Mut. Resp. at 8-11.

Whether a building is being used for its customary operations is irrelevant under the Policy. What is relevant under the Policy is whether there is enough of the insured's personal property to conduct customary operations. See Policy, ECF No. 1-1 at 44-45. That is what distinguishes this case from the cases Church Mutual cites. In all of those cases, the "Vacancy" exclusion either did

9

not define vacancy, see Augenstein, 2025 WL 2432212, at *4, or defined "vacancy" to include a "use" element, see Saiz, 299 F. App'x at 839 (defining "vacant," in relevant part, as follows: "(2) When this policy is issued to the owner or general lessee of a building, . . . [s]uch building is vacant unless at least 31% of its total square footage is: . . . . (b) <u>Used by the building owner to conduct customary operations</u>.") (alteration in original) (emphasis added)); Wild Waters, LLC, 2013 WL 4710271, at *2 (same); Keren Habinyon, 462 F. App'x at 72 (same); Oakdale Mall Assocs., 702 F.3d at 1121 (same); Congregation Bikur Cholim-Shevah Achim, Doc. 167 at 63 (same); JJD Assocs. of Palm Beach Ltd., 2011 WL 5873061, at *1 (same); Wilheit Fam. Props. L.P., 2013 WL 12291715, at *1 (same); Hollis, 2010 WL 1050991, at *1 (same); see also Sorema N. Am. Reinsurance Co., 574 S.E.2d at 379 (defining "Vacancy" in relevant part as "when 70% or more of [the building's] square footage. . . <u>Is not used to conduct customary operations</u>") (emphasis added); Holmes, 756 S.E.2d at 849-50 (same). Because the Policy at issue in this case does not define "vacancy" to include a "use" element—and instead is concerned only with whether there is enough personal property in the building to conduct customary operations—Church Mutual's argument is irrelevant and the cases to which it cites are inapposite.

Second, the Court rejects Church Mutual's alternative argument that no coverage is owed for the March 2023 fire because there was not enough personal property to conduct Chabad's "customary operations" after the December 2022 fire. See Church Mutual's Mot. at 14. The unrefuted evidence establishes that the Property contained enough of Chabad's personal property to conduct customary operations at the time of <u>both</u> fires. Indeed, Church Mutual's own investigator and insurance adjuster, Mitch Kies, submitted a Report nine months <u>after</u> the March 2023 fire stating that his "investigation revealed that while the building was not actively being

used, there remained sufficient contents in the structure for the Insured to continue their normal operations." Kies Report at 3, ECF No. 59-1 at 2.

Consistent with Mr. Kies's Report, Chabad's Rabbi, Chaim Schmukler, testified at his deposition that "[e]verything is there [at the Property]. Whatever we needed is there, we can operate it." Schmukler Dep. at 30:12-13, ECF No. 59-9 at 5. When asked what they need that was there to use, Rabbi Schmukler responded: "Tables, chairs. You know, and that's really what we need, and the books[.]" Id. at 30:17-19.

Similarly, Chabad employee Luke Saiz testified at his deposition that although Chabad was not conducting events inside the building for some time prior to the December 2022 fire:

> [I]t was set up to do that if we needed to. We had everything there to set up inside. We had all of our equipment, all of our books, all of our prayers, all of our – everything was there that – just we preferred to use the outside area a lot more over there. But we were fully set up and ready to use the facility with a few days' notice because certain holidays just take a lot to set up.
>
> And our cleaning lady at the time would just go up there, dust off everything, run a vacuum through there, and do what they needed to do to get it ready if we needed to. But it was fully set up. We, every month, would go, make sure the bema was set up. I would make sure all the books were good.
>
> We would make sure everything was there should we need it to do inside events, but we were not doing events there. But we were set up and ready to do them, just – we just didn't do them there, outside of the big events.

Saiz Dep. at 20:4-23, ECF No. 71-3 at 4. Mr. Saiz further testified that even after the December 2022 fire Chabad had enough personal property in the building to conduct services:

> [W]e still had all of our serving utensils, all of our coffeemakers, the stove, the refrigerator. We still had all of our books for our regular services, which is the Siddur and our regular books. We still had our Passover stuff there, our stuff for the Seders. So we still had a set of Seder plates there. We still had all of the cups and all of the accoutrements that go with that.
> . . .

> We also had all of our Siddurs there. We had the shawls that they use, the prayer shawls. We had backup kippahs. We had the backup of the tzitzits, which are the small shirts that they wear under their clothes. We had brand-new boxes of shawls there and everything for our regular prayer services that they use. The rabbi had a full set of paperwork in his desk there that go over all of the different events and all the stuff. So he had all of his stuff there.
>
> So we were – we had everything still there. We had tables. We had chairs and all that stuff. We hadn't replaced the Rosh Hashanah or the Yom Kippur books just because we hadn't gotten to that holiday yet. So I would have just brought over a couple of books. But we have new books of the Siddurs, new books of the other holy book that they read from that I can't pronounce because I'm not Jewish. But we had all that still there after that fire.
> . . .
>
> [W]e still had, like I said, everything that we needed to do services, to make coffee, do our normal everyday stuff that we do at our – our building. We had a complete second set of gear. We have two sets. We had one there and one here.
>
> Because certain things had to be for dairy. Certain things are for meat. And certain things are for Passover. So we have a set of dishes for dairy. We have a set of dishes for meat. And we had a set of dishes for Passover there. We have serving gear for meat. We have serving gear for dairy. And we had serving gear for Passover there.
>
> So there were still three sets of silverware, three sets of plates, three sets of serving utensils, three sets of water pitchers. All of that was still there for the three major times of the year that we use both meat, dairy, and the Passover stuff that we use for those eight days.

Id. at 66:24 – 69:19, ECF No. 71-3 at 6 (emphasis added). Mr. Saiz also testified that only 30 of the 110 chairs in the building were damaged in the December 2022 fire, and only two tables—the two that were upstairs—were damaged in the December 2022 fire, but "most" of the tables were moved downstairs "[s]o those didn't have a problem." Id. at 70:7 – 71:12, ECF No. 71-3 at 7. The kitchen utensils, bookcases, and podium were not damaged. Id. at 71:13 – 72:18.

The only evidence Church Mutual cites in support of its argument that there was not enough personal property to conduct Chabad's "customary operations" after the December 2022 fire are photographs taken after the December 2022 fire. See Church Mutual Mot. at 14. It argues that

12

"[t]he photographic evidence is undisputable and irrefutable that the majority of the tables and chairs stored at the Property were irreparably damaged in the December 2022 fire." Id.

This argument is borderline frivolous. Although the photographs depict a room in disarray (apparently due to vandalism), they do not appear to depict any irreparably damaged tables, much less a "majority" of them. See ECF No. 65-13. And although two or three of the chairs depicted in the photographs appear to have suffered damage, see id. at 1-2, they do not appear to be "irreparably" damaged. And the vast majority of the chairs depicted in the photographs appear to be usable for Chabad's customary operations. See id. at 1-3. As such, the Court finds that the photographs are insufficient to create a genuine issue of material fact as to whether there was enough personal property in the building to conduct Chabad's "customary operations" after the December 2022 fire.

Therefore, the Court finds that the "Vacancy" loss condition does not preclude coverage for loss or damage to the Property caused by or resulting from either fire because the unrefuted evidence establishes that the Property contained enough of Chabad's personal property to conduct customary operations at the time of both fires. Consequently, the Court concludes that Chabad is entitled to summary judgment on the issue of coverage as to both fires. The Court will defer ruling on Church Mutual's Motion with regard to Chabad's other counterclaims and instead order the Parties to schedule a settlement conference with Magistrate Judge Steven C. Yarbrough, or any other Magistrate Judge by unanimous agreement,[8] to attempt in good faith to settle the remaining issues and claims.

---

[8] See D.N.M.LR-Civ. 73.4 (Consent to Settlement Conference Conducted by a Magistrate or Bankruptcy Judge).

13

**V.     Conclusion**

Accordingly, it is **HEREBY ORDERED** that:

1. Chabad of New Mexico's Motion for Summary Judgment on the Issue of Coverage, ECF No. 59, is **GRANTED**;

2. The Court **DECLARES** that Chabad of New Mexico's insurance policy with Church Mutual Insurance Company, S.I., Policy No. 0229935-02-409288, provides coverage for loss or damage to the Property caused by or resulting from the December 2022 and March 2023 fires;

3. Church Mutual Insurance Company, S.I.'s Corrected Consolidated Motion for Summary Judgment, ECF No. 65, is **DENIED** as to the issue of coverage and **DEFERRED** as to all other claims and issues pending the completion of a settlement conference;

3. Within **TWENTY-ONE DAYS** of the date of this Order, the Parties shall request a settlement conference with Magistrate Judge Steven C. Yarbrough, or any other Magistrate Judge by unanimous agreement, to attempt in good faith to settle the remaining claims and issues; in the event the settlement conference is unsuccessful, the Court will resume consideration of the remainder of Church Mutual's Motion.

_____
**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE

14