IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CHURCH MUTUAL INSURANCE
COMPANY, S.I.,

    Plaintiff/Counter-Defendant,

v.

                                                                                    Case 1:24-cv-00090-MIS-SCY

CHABAD OF NEW MEXICO,

    Defendant/Counter-Claimant.

## ORDER DENYING CHURCH MUTUAL INSURANCE COMPANY'S CORRECTED MOTION TO EXCLUDE THE TESTIMONY OF S. SETCAVAGE

**THIS MATTER** is before the Court on Plaintiff/Counter-Defendant Church Mutual Insurance Company, S.I. ("Church Mutual")'s Corrected Motion to Exclude the Testimony of S. Setcavage ("Motion"), ECF No. 64, filed August 14, 2025. Defendant/Counter-Claimant Chabad of New Mexico ("Chabad") filed a Response on August 18, 2025, ECF No. 67, to which Church Mutual filed a Reply on August 28, 2025, ECF No. 75. The Court held a hearing on the Motion February 4, 2026. See ECF No. 96. After considering the Parties' submissions, the record, and the relevant law, the Court will **DENY** the Motion.

**I.**      **Background**

On June 2, 2022, Church Mutual renewed an insurance policy issued to Chabad that covered certain real property Chabad owns in Rio Rancho, New Mexico ("Policy," ECF No. 1-1). The Policy contains a loss condition for "Vacancy," which states, in relevant part:

> If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage, we will:
>
> a.    Not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

      (1)      Vandalism;

. . .

    b.      Reduce the amount we would otherwise pay for the loss or damage by 15%.

. . .

    A building is vacant when it does not contain enough of your personal property to conduct customary operations. . . .

ECF No. 1-1 at 44-45. The Policy also contains a "Valuation" provision that describes how Church Mutual will determine the value of loss or damage to covered property. Id. at 45. That provision states, in relevant part:

   7.      Valuation

        a.      Replacement Cost. If Replacement Cost is shown in the Declarations Page as applicable to Covered Property, we will determine the value of Covered Property in the event of loss or damage as follows:

            (1)      At Replacement Cost (without deduction for depreciation) as of the time of loss or damage . . .

            . . .

            (4)      We will not pay more for loss or damage on a Replacement Cost basis than the least of:

                (a)      The Limit of Insurance applicable to the damaged property;

                (b)      The cost to replace "on the same premises" the lost or damaged property with other property:

                    1)      Of comparable material and quality; and

                    2)      Used for the same purpose; or

                (c)      The amount you actually spend that is necessary to repair or replace the lost or damaged property.

Id. at 45.  "Replacement Cost" is shown in the Declarations Page as applicable to the Covered Property, and limits coverage to $1,412,000.  Id. at 9.

On December 28, 2022, there was an act of arson committed on a building covered by the Policy.[1]  Compl. ¶ 8, ECF No. 1.  On March 5, 2023, there was a second act of arson committed on the same building.  Id. ¶ 9.  Chabad submitted claims under the Policy to Church Mutual for both fires.  Id. ¶¶ 1, 10.

On January 18, 2023, Church Mutual sent Chabad a reservation of rights letter acknowledging Chabad's claim for the December 28, 2022 fire, stating that it was investigating the claim, and indicating that the Policy's "Vacancy" loss condition may be applicable to the claim.  ECF No. 65-11.  On July 10, 2023, Church Mutual sent Chabad's attorney a reservation of rights letter stating that Church Mutual's investigation of both claims "remains ongoing, and no coverage position has been made."  ECF No. 65-14.

On December 12, 2023, the claims adjuster assigned to investigate the fires, Mitch Kies, submitted a report to Church Mutual's Property Claim's Director, Shawn Graybill.  See Kies Report, ECF No. 59-1; Graybill Dep. at 4:9-12, ECF No. 71-1.  Mr. Kies's Report indicates that Church Mutual investigated the claims under a reservation of rights, quotes the "Vacancy" loss condition, and states that "while the building was not actively being used, there remained sufficient contents in the structure for the Insured to continue their normal operations."  Kies Report at 3, ECF No. 59-1 at 2.

On January 29, 2024, Church Mutual instituted this diversity action, seeking a declaratory judgment that it owes no duty to cover Chabad's claims because the property was "vacant" for

---

[1] Under New Mexico law, the term "vandalism" in an insurance contract encompasses acts of arson. Battishill v. Farmers Alliance Ins. Co., 127 P.3d 1111, 1112 (N.M. 2006).

3

more than sixty consecutive days before the acts of arson, and therefore no coverage is owed pursuant to the Policy's "Vacancy" loss condition.  See Compl. ¶¶ 1-6, 12-20, ECF No. 1.

On March 25, 2024, Chabad filed an Answer to the Complaint and counterclaims for a declaratory judgment that Church Mutual owes coverage for Chabad's claims (Count I), breach of contract (Count II), insurance bad faith and violations of the New Mexico Insurance Code and Unfair Practices Act (Count III), and fraud and misrepresentation (Count IV).  ECF No. 8.

On August 1, 2025, Chabad filed a Motion for Summary Judgment on the Issue of Coverage ("Chabad's Motion").  ECF No. 59.  On August 14, 2025, Church Mutual filed a Corrected Consolidated Motion for Summary Judgment, seeking summary judgment on Chabad's counterclaims for a declaratory judgment regarding coverage, breach of contract, bad faith, statutory violations, and Chabad's request for punitive damages.  ECF No. 65 ("Church Mutual's Motion").

On September 23, 2025, the Court issued an Order granting Chabad's Motion and denying in part and deferring ruling in part on Church Mutual's Motion ("First Summary Judgment Order").  ECF No. 83.  Specifically, the Court found that Chabad's building was "very obviously" not "vacant" under the unambiguous terms of the Policy, id. at 9, and therefore Chabad was entitled to summary judgment on the issue of coverage as to both fires, id. at 13-14.  The Court deferred ruling on Church Mutual's Motion with regard to the other issues and ordered the Parties to attend a settlement conference before a magistrate judge.  Id.  The Parties attended a settlement conference on November 21, 2025, but did not settle the remaining claims.  See ECF No. 86.

Chabad seeks to introduce expert testimony "regarding insurance industry standards, customs and practices and about how Church Mutual Insurance Company deviated from those standards in its handling of the property damage claims of" Chabad.  Resp. at 1.  In this regard,

4

Chabad has hired Stuart Setcavage who purports to be "an expert in the field of insurance industry claim handling, policy interpretation and coverage analysis[.]" Setcavage Report at 2, ECF No. 64-1.

On August 14, 2025, Church Mutual filed the instant Motion to exclude Mr. Setcavage's testimony. ECF No. 64. Chabad filed a Response, ECF No. 67, to which Church Mutual filed a Reply, ECF No. 75. The Court held a hearing on the Motion February 4, 2026. See ECF No. 96.

## II. Legal Standard

Rule 702 of the Federal Rules of Evidence governs testimony by expert witnesses, and provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> **(b)** the testimony is based on sufficient facts or data;
>
> **(c)** the testimony is the product of reliable principles and methods; and
>
> **(d)** the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. This Rule imposes on a district court a "gatekeeper" obligation. See Schulenberg v. BNSF Ry. Co., 911 F.3d 1276, 1282 (10th Cir. 2018) (quoting Dodge v. Cotter Corp., 328 F.3d 1212, 1221 (10th Cir. 2003) (quoting Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589 (1993))). Specifically, "[i]n evaluating the admissibility of expert testimony, 'the district court must satisfy itself that the proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact, before permitting a jury to assess such testimony.'" Id. (citing United States v. Nacchio, 555 F.3d 1234, 1241 (2009)). "This requires a two-step process. First,

the district court must 'determine whether the expert is qualified 'by knowledge, skill, experience, training, or education' to render an opinion.'" Id. (quoting Nachhio, 555 F.3d at 1241 (quoting Fed. R. Evid. 702)). "Second, if the expert is sufficiently qualified, the district court 'must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology.'" Id. (quoting Nacchio, 555 F.3d at 1241). "[T]he court is not required 'to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.'" Id. (quoting Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997)).

### III. Discussion

Church Mutual moves to exclude Mr. Setcavage's opinion on the grounds that he is unqualified, his opinion usurps the role of the Court, his opinion is unreliable, and his opinion will not assist the jury. ECF No. 64 at 5-10.

Mr. Setcavage's Report offers opinions on the Policy's Vacancy and Valuation loss conditions. See id. at 5-9. As to the Vacancy provision, Mr. Setcavage states:

> Claim professionals are trained to know that "*The vacancy condition of the building combines suspension of coverage for certain perils with reduction in coverage for others . . . The approach . . . eliminates coverage only for the perils most affected by vacancy, and it reduces coverage for damage by other perils.*"

Id. at 6.[2] Mr. Setcavage notes that "neither the perils of arson nor fire are specifically identified" in the Vacancy provision, and opines that "the intent of the policy was to reduce coverage by 15% for perils not specifically listed, not eliminate it altogether." Id. Mr. Setcavage further opines that "Church Mutual is attempting to redefine 'vacancy' to include factors not set forth in the policy . .

---

[2]   Mr. Setcavage does not cite the source of the quotation.

6

. . Church Mutual now wants vacant to mean unused." Id. at 7. In this regard, Mr. Setcavage states:

> Claims professionals are trained to know that the plain meaning of an insurance policy will prevail unless its terms somehow violate public policy. . . .
>
> Obviously, in property claims, commercial buildings are often unoccupied . . . . However, *unoccupied*, or *unused*, does not necessarily mean *vacant*. Accordingly based upon the known facts of this claim and the policy language, the property does not meet the policy definition of vacancy, so there is an insufficient basis to deny payment under the property coverage afforded.

Id.

Mr. Setcavage also states that Church Mutual's renewal of the Policy in June 2022 and acceptance of premiums paid by Chabad is "outrageous conduct in my professional opinion" because Church Mutual had previously denied a vandalism claim Chabad made in July 2021 based on the Vacancy provision.[3] Id. at 7-8.

As to the Valuation provision,[4] Mr. Setcavage states that "claims professionals are trained to understanding [sic] 'Assuming a claim is covered, the insurer will pay an amount to be determined as specified in the policy." Id. at 8 (quoting Donald S. Malecki & Eric A. Wiening, Insurance Contract Analysis 78 (1st ed. 1995)). He states that "calculating the loss differently than the policy promises to pay violates industry standards." Id. Mr. Setcavage concludes that because the Declarations Page specifies "Replacement Cost," "the loss is payable in an amount to replace

---

[3] Whether Church Mutual owes coverage for the July 2021 claim is not at issue in this case.

[4] Church Mutual's Motion and Reply focus almost entirely on Mr. Setcavage's opinion regarding the Vacancy provision, and offer virtually no argument specific to Mr. Setcavage's opinion regarding the Valuation provision. At the hearing, Church Mutual argued in passing that Mr. Setcavage should not be permitted to testify regarding how much Church Mutual should pay for coverage. Counsel for Chabad stated that it did not intend for Mr. Setcavage to testify regarding the amount of coverage owed, but rather how the amount is determined under the Policy. He further stated that he would not be asking the jury to determine the amount of coverage in this case. Thus, it is questionable whether Mr. Setcavage's opinion regarding the Valuation provision will be relevant to a fact in issue. However, for purposes of the Motion, the Court will assume that Mr. Setcavage's opinion regarding the Valuation provision is relevant.

the same building with comparable building materials designed for the same land, or the policy limit, whichever is less." Id. at 9.

### a)   Qualification

Church Mutual initially argues that Mr. Setcavage is unqualified to offer expert opinions in this case because he lacks sufficient knowledge of property insurance policy language and property insurance adjusting to offer reliable opinions regarding the subject property. Mot. at 6. Church Mutual notes that Mr. Setcavage's background is primarily in handling and supervising automobile insurance claims and most of the cases for which he has provided expert testimony involved automobile insurance claims. Id.

But Church Mutual does not articulate any difference between industry standards applying to claims handling under automobile insurance policies and property insurance policies that would render Mr. Setcavage's knowledge, experience, education, and training as to the former irrelevant to the latter. And Church Mutual ignores Mr. Setcavage's wealth of knowledge, experience, education, and training regarding the insurance industry in general. From 1988 through 2012, Mr. Setcavage handled and supervised motor vehicle insurance claims for State Farm Mutual Automobile Insurance Company. Setcavage Report at 2. He also has "considerable experience in the handling and management of third-party, contractual and extracontractual lawsuits." Id. Since resigning as a litigation team manager in 2012, he has focused on consulting legal counsel regarding insurance coverage and claims and conducting insurance-related mediations. Id.

Significantly, Mr. Setcavage has "reviewed the claim practices and claim handling materials from personal lines, property and casualty and commercial lines insurers and ha[s] become familiar with how various insurers have processed, handled, adjusted and supervised personal lines and commercial claims in both first and third-party contexts." Id. (emphasis added).

8

He has "learned industry claim handling standards based on personal learning, training, research, and industry experience for over three decades." Id. His adjuster's licenses in Texas, Florida, and West Virginia "enjoy reciprocal agreements with most every state that requires licensing." Id. As an industry expert he was asked to testify before the Pennsylvania Senate Banking & Insurance Committee for analysis and opinions regarding the impact that proposed changes to Pennsylvania law would have on the insurance industry in terms of verdicts, settlements, and premiums. Id. He is a past president of the Pennsylvania Defense Institute and also served as chairman of its Coverage and Claims Practices committee. Id. Throughout his career he has attended professional seminars and continuing legal education seminars related to insurance industry claims practices and procedure, auto law, policy, and coverage bad faith. Id. at 3. He has given many presentations to both claims and law groups on insurance and claims-related topics, and served as faculty for the Pennsylvania Association for Justice, the Pennsylvania Bar Institute, the West Virginia Association for Justice, the Florida Justice Association, and the Kentucky Justice Association. And his expert testimony has been admitted by courts in several state and federal jurisdictions. See id. at 2.

Based on the foregoing, the Court finds that Mr. Setcavage is qualified by knowledge, skill, experience, training, and/or education to render an opinion on insurance practices and standards and whether Church Mutual deviated from those standards in its handling of Chabad's claims and in renewing Chabad's Policy in 2022 with the "Vacancy" loss provision. See Mordhorst Cleaning, LLC v. Am. Strategic Ins. Corp., Civil Action No. 23-cv-00017-NYW-MEH, 2024 WL 4932505, at *12 (D. Colo. Dec. 2, 2024) (observing that "insurance experts routinely rely on their experience in the industry to articulate industry standards" and "an expert witness is permitted to rely 'solely on [her] experience' in forming her opinions" (quoting Nacchio, 555 F.3d at 1258)); Wheatridge Off., LLC v. Auto-Owners Ins. Co., 578 F. Supp. 3d 1187, 1208-09 (D. Colo. 2022) (finding that

9

a witness who had been working in the insurance industry as a claims adjuster, fraud investigator, and director of claims for almost 25 years was qualified to give an expert opinion on insurance industry practices and standards); O'Sullivan v. Geico Cas. Co., 233 F. Supp. 3d 917, 924-25 (D. Colo. 2017) (finding that a witness who "worked for decades in the insurance industry, in a variety of capacities relevant to matters on which he offers opinions here[,]" and who was familiar "with the standards and practices used by his former employer, with standards published by industry bodies, and with statutory law that insurers in Colorado must follow" was qualified to give an expert opinion as to whether the insurer's conduct deviated from industry standards). Church Mutual's gripe with Mr. Setcavage's superior experience with automobile insurance claims, as opposed to property insurance claims, "is a fact which opposing counsel can no doubt highlight on cross-examination, and which bears on the weight or credibility of Mr. [Setcavage's] opinions, but not on their admissibility." O'Sullivan, 233 F. Supp. 3d at 924.

### b) Usurping the role of the Court

Church Mutual next argues that Mr. Setcavage's interpretation of the Policy's terms are legal conclusions that usurp the role of the Court. Mot. at 7 (citing Lone Star Steakhouse & Saloon, Inc. v. Liberty Mut. Ins. Grp., 343 F. Supp. 2d 989, 1013 (D. Kan. 2004)). The Motion does not specify which of Mr. Setcavage's opinions Church Mutual believes are legal conclusions. However, it appears to object to Mr. Setcavage's opinion that the plain language of the Policy's "Vacancy" provision applies, rather than Church Mutual's position that "vacancy" means "unused." See Mot. at 5.

The Court agrees with Church Mutual that the interpretation and construction of an insurance policy is a question of law for the Court, see Gamboa ex rel. Gamboa v. Allstate Ins. Co., 726 P.2d 1386, 1388 (N.M. 1986) (stating that whether an individual was covered by an

10

insurance policy's uninsured motorist clause "is a question of law for the courts to decide"), and one that the Court performed when it ruled on the Parties' cross-motions for summary judgment on the issue of coverage. See First Summ. J. Order at 9-13 (concluding that Chabad's building was not "vacant" under the unambiguous terms of the Policy and that therefore Chabad was entitled to summary judgment on the issue of coverage as to both fires). As such, the Court finds that this argument is moot.[5]

### c) Reliability

Church Mutual next argues that Mr. Setcavage's opinion is unreliable because "[n]o discernible methodology exists to guide Mr. Setcavage's interpretation of the Policy." Mot. at 8. It argues that "[s]omeone more well-versed in the law around interpretation of insurance policies, like someone with a law degree, would be much better qualified to resolve questions of policy interpretation than Stuart Setcavage." Id. It argues that Mr. Setcavage may rely on his experience to inform his opinion, but he must explain how, and he has not done so. Id. (citing Chaney v. State Farm Mut. Auto. Ins. Co., Case No: 6:14–cv–1043–Orl–41DAB, 2015 WL 12838839, at *4 (M.D. Fla. Dec. 9, 2015)).

The Court first finds that Church Mutual's argument is largely moot because it takes issue primarily with Mr. Setcavage's interpretation of the Policy's "Vacancy" loss condition, see id., and the Court has already interpreted that provision and found that it does not preclude coverage, First Summ. J. Order at 9-13. Thus, Mr. Setcavage's interpretation of the Policy's "Vacancy" loss condition will be relevant only to whether Church Mutual's interpretation of the Policy's

---

[5] At the hearing, Church Mutual's counsel conceded that the Court's First Summary Judgment Order mooted much of the instant Motion.

11

"Vacancy" loss condition was frivolous, unfounded, or otherwise violative of the duty of good faith and fair dealing.

The Court further finds that Mr. Setcavage has adequately explained how his experience informed his opinion. Mr. Setcavage explains that his forensic findings, analysis, and professional opinions are "based upon my specialized knowledge, training, expertise, and experience in the automobile claim handling industry over the past 35+ years." Setcavage Report at 1. He states that

> Claim professionals are trained to know that "*The vacancy condition of the building combines suspension of coverage for certain perils with reduction in coverage for others . . . The approach . . . eliminates coverage only for the perils most affected by vacancy, and it reduces coverage for damage by other perils.*"

Id. at 6. He further states that "[c]laim professionals are trained to know that the plain meaning of an insurance policy will prevail unless its terms somehow violate public policy" and that "Church Mutual is attempting to redefine 'vacancy' to include factors not set forth in the policy it had underwritten and sold to this policyholder." Id. at 7. As to valuation, Mr. Setcavage states that "[c]laims professionals are trained to know that the plain meaning of an insurance policy will prevail unless its terms somehow violate public policy. Like ignoring policy definitions relative to coverage, calculating the loss differently than what the policy promises to pay violates industry standards." Id. at 8 (citation omitted).

It is unclear what more of an explanation Church Mutual believes is necessary in this context. As one court has observed in deciding a motion to exclude Mr. Setcavage's opinions: "District courts evaluating the reliability of non-scientific expert testimony do not have to focus on whether the expert employed an objective standard or methodology and can instead 'focus on the reliability of the expert's personal knowledge or experience.'" Cook v. Erie Ins. Co., 478 F.

12

Supp. 3d 658, 666 (S.D. Ohio 2020) (quoting Luna v. Bell, No. 3:11-cv-00093, 2013 WL 12316066, at *5 (M.D. Tenn. Aug. 1, 2013)).  See also New Mexico v. Torrez, 210 P.3d 228, 234 (N.M. 2009) ("[W]hen testing the reliability of non-scientific expert testimony, rather than testing an expert's scientific methodology as required under Daubert and Alberico, the court must evaluate a non-scientific expert's personal knowledge and experience to determine whether the expert's conclusions on a given subject may be trusted.").  Here, Mr. Setcavage's personal knowledge and experience permits him to offer an expert opinion regarding insurance industry standards, customs and practices and about how Church Mutual deviated from those standards in its handling of Chabad's claims.  See O'Sullivan, 233 F. Supp. 3d at 925 ("The Court finds it sufficiently clear from the overall content and organization of Mr. Torres's written report that his methodology amounts to explaining what he knows of insurance industry standards and practices based on his experience, explaining the facts and evidence he reviewed in this case, then opining on the ways he believes Geico's handling of Plaintiff's claim fell short [of] the relevant industry standards (as he understands them) and/or differed from handling of similar claims in his experience."); Stoker v. State Farm Mut. Auto. Ins. Co., Civil Action No. 19-cv-03569-NYW, 2021 WL 4201583, at *8 (D. Colo. May 6, 2021) (finding insurance industry expert reliable where he "identifies what he perceives as the relevant insurance industry standards, explains those standards, and states that he relied on his experience in the insurance industry in forming his opinions as to whether State Farm met those standards").

      **d)**     **Assist the jury**

Finally, Church Mutual argues that Mr. Setcavage's testimony will not assist the jury.  Mot. at 9-10.  It argues "[n]ot only are his opinions nothing more than his personal beliefs regarding what the law should be, how the Policy should read, and what duties Church Mutual should have

13

with respect to Chabad, there is nothing about Church Mutual's claim handling procedures or the principles of bad faith that would require any real expert opinion." Id.

In New Mexico, "[a]n insurer acts in bad faith when 'its reasons for denying or delaying payment of the claim are frivolous or unfounded.'" Hauff v. Petterson, 755 F. Supp. 2d 1138, 1145 (D.N.M. 2010) (quoting Sloan v. State Farm Mut. Auto. Ins. Co., 85 P.3d 230, 236 (N.M. 2004)). "A 'frivolous or unfounded' refusal to pay is an 'an arbitrary or baseless refusal,' a refusal recklessly lacking any arguable support in the insurance policy or facts of the case." Id. (quoting Sloan, 85 P.3d at 236-37. However, "a bad faith claim need not depend on the existence of coverage." Albuquerque Ambulatory Eye Surgery Ctr. LLC v. Transp. Ins. Co., 566 F. Supp. 3d 1178, 1196 (D.N.M. Oct. 12, 2021) (quoting Haygood v. United Servs. Auto. Ass'n, 453 P.3d 1235, 1241 (N.M. Ct. App. 2019)). An insured "might establish bad faith in a variety of ways—whether by proving [the insurer] failed to deal fairly in handling the claim, failed to conduct a fair investigation, or failed to fairly evaluate coverage, among other possibilities." Haygood, 453 P.3d at 1242 (citations omitted).

Here, Mr. Setcavage has offered opinions that may assist the jury in deciding whether Church Mutual has engaged in bad faith insurance conduct. For example, he opines that Church Mutual's handling of Chabad's claims was "unfair" and "falls well below industry standards." Setcavage Report at 9. He further states that "[t]he purported investigation in this matter was woefully inadequate as is evidenced by the claim notes. In fact, the claim handling or investigation is indicia of a pre-determination to deny payment for these claims." Id. at 10. He further states that Church Mutual's renewal of the Policy in June 2022 and acceptance of premiums paid by Chabad is "outrageous conduct in my professional opinion" because Church Mutual had previously denied a vandalism claim Chabad made in July 2021 based on the Vacancy provision.

14

Stated differently, Mr. Setcavage believes it was "outrageous" for Church Mutual to renew a policy and accept premiums to insure a property which it had already determined was vacant and, therefore, not covered under the Policy. See id. These opinions (and others) may assist the jury in determining whether Church Mutual engaged in bad faith insurance conduct under New Mexico law. See Am. Nat'l Prop. & Cas. Co. v. Cleveland, 293 P.3d 954, 962-63 (N.M. Ct. App. 2012) (affirming the district court's denial of a motion in limine to exclude expert testimony regarding bad faith insurance where the insurance company argued, inter alia, that the expert had not identified the relevant standards, how the insurer failed to meet those standards, or how the insurer's actions differed from industry standards).

### IV. Conclusion

The Court is satisfied that Mr. Setcavage's proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact. Accordingly, it is **HEREBY ORDERED** that Church Mutual Insurance Company's Corrected Motion to Exclude the Testimony of S. Setcavage, ECF No. 64, is **DENIED**.

_____
**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE