IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CHURCH MUTUAL INSURANCE
COMPANY, S.I.,

    Plaintiff/Counter-Defendant,

v.

                                      Case 1:24-cv-00090-MIS-SCY

CHABAD OF NEW MEXICO,

    Defendant/Counter-Claimant.

### ORDER GRANTING IN PART AND DENYING IN PART CHURCH MUTUAL INSURANCE COMPANY'S CORRECTED CONSOLIDATED MOTION FOR SUMMARY JUDGMENT

THIS MATTER is before the Court on Plaintiff/Counter-Defendant Church Mutual Insurance Company ("Church Mutual")'s Corrected Consolidated Motion for Summary Judgment ("Motion"), ECF No. 65, filed August 14, 2025. Defendant/Counter-Claimant Chabad of New Mexico ("Chabad") filed a Response on August 22, 2025 ("Response"), ECF No. 71, to which Church Mutual filed a Reply on September 11, 2025 ("Reply"), ECF No. 81. Upon review of the Parties' submissions, the record, and the relevant law, the Court will **GRANT IN PART AND DENY IN PART** the Motion.

**I.    Undisputed Facts[1]**

Chabad is a Jewish organization that provides educational and social programs. Pl.'s Facts ¶ 3; Def.'s Resp. Facts ¶ 3. On June 2, 2022, Church Mutual issued Chabad Policy No. 0229935-

---

[1] The following facts are gleaned from Chabad's Statement of Undisputed Material Facts ("Def.'s Facts"), ECF No. 59 at 3-5; Church Mutual's Response to Chabad's Statement of Undisputed Facts ("Pl.'s Resp. Facts"), ECF No. 69 at 2-5; Church Mutual's Additional Undisputed Facts ("Pl.'s Add'l Facts"), id. at 5-7; Church Mutual's Statement of Material Undisputed Facts ("Pl.'s Facts"), ECF No. 65 at 2-7; Chabad's Response to Church Mutual's Statement of Material Undisputed Facts, ("Def.'s Resp. Facts"), ECF No. 71 at 3-5; and Chabad's Statement of Additional Facts Which Chabad Contends are Material to Resolution of Church Mutual's Motion for Summary Judgment, id. at 5-8. All facts are undisputed unless otherwise indicated.

02-409288 ("Policy") which insured a building and personal property Chabad owned at 2009 Grande Blvd. SE in Rio Rancho, New Mexico ("Property"). Pl.'s Facts ¶ 1; Def.'s Facts ¶ 1; Def.'s Resp. Facts ¶ 1; Pl.'s Resp. Facts ¶ A. The Policy's "Building and Personal Property Coverage Form" states, in part: "We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations Page caused by or resulting from any Covered Cause of Loss." Def.'s Facts ¶ 4; Pl.'s Resp. Facts ¶ D.[2] The Policy contains a loss condition for "Vacancy," which states, in relevant part:

> If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage, we will:
>
> a.  Not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:
>
>    (1)   Vandalism;
>
> . . .
>
> A building is vacant when it does not contain enough of your personal property to conduct customary operations. . . .

Pl.'s Facts ¶ 2; Def.'s Resp. Facts ¶ 2; Def.'s Facts ¶ 8; Pl.'s Resp. Facts ¶ C.

On December 28, 2022, and March 5, 2023—while the Policy was in effect—acts of arson were committed at the subject Property. Def.'s Facts ¶¶ 2-3; Pl.'s Resp. Facts ¶¶ A, C.[3] Chabad

---

[2] Church Mutual purports to dispute this fact because it "provides only a small snapshot of the policy and makes the conclusory allegation that except for exclusions in the policy, Church Mutual is obligated to pay[,]" which "is a gross over-simplification of the policy." Pl.'s Resp. Facts ¶ D. However, Church Mutual does not, and cannot, genuinely dispute that Chabad correctly quoted the Policy's "Building and Personal Property Coverage Form," see Policy, ECF No. 1-1 at 57, and therefore the Court deems this fact undisputed. See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

[3] Church Mutual admits that in December 2022 and March 2023, "fires occurred on the Property." Pl.'s Resp. Facts ¶ C. It does not explicitly dispute that arson was the cause of the fires. See id. And, in fact, Church Mutual's Response to Chabad's Motion for Summary Judgment characterizes the Parties' dispute as "whether insurance coverage exists for two fires caused by vandalism/arson on Chabad's" property. ECF No. 69 at 1 (emphasis added). And Church Mutual's Complaint explicitly alleges that the December 28, 2022 and March 5, 2023 fires were "act[s] of arson." ECF No. 1 ¶¶ 8-9. Nowhere does Church Mutual argue or assert that the fires were caused by

submitted property damage claims after both fires. See Pl.'s Facts ¶¶ 17, 20; Def.'s Resp. Facts ¶¶ 17, 20. Church Mutual assigned Claims Adjuster Mitch Kies to investigate and handle Chabad's property damage claims. Def.'s Facts ¶ 6; see also Pl.'s Resp. at 17;[4] Kies Report at 1, ECF No. 59-1 at 1. Mr. Kies submitted a Report stating that his "investigation revealed that while the building was not actively being used, there remained sufficient contents in the structure for the Insured to continue their normal operations." Def.'s Facts ¶ 10; Pl.'s Resp. Facts ¶ D.[5] To date, Church Mutual has not provided coverage for Chabad's claims. Def.'s Facts ¶ 7; Pl.'s Resp. Facts ¶ D.

## II.   Procedural History

On January 29, 2024, Church Mutual instituted this diversity action, seeking a declaratory judgment that it owes no duty to cover Chabad's claims because the property was "vacant" for more than sixty consecutive days before the acts of arson, and therefore no coverage is owed pursuant to the Policy's "Vacancy" loss condition. See Compl. ¶¶ 1-6, 12-23, ECF No. 1.

On March 25, 2024, Chabad filed an Answer to the Complaint and counterclaims for a declaratory judgment that Church Mutual owes coverage for Chabad's claims (Count I), breach of contract (Count II), bad faith insurance conduct and violations of the New Mexico Insurance Code and Unfair Practices Act (Count III), and fraud and misrepresentation (Count IV). ECF No. 8.

---

anything other than arson. Because Church Mutual does not specifically controvert the assertion that acts of arson caused the fires, the Court deems this fact undisputed. See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.").

[4]   Church Mutual did not address this fact in its Response to Chabad's Statement of Undisputed Facts, and therefore the Court deems it undisputed pursuant to Federal Rule of Civil Procedure 56(e)(2) and the District's Local Rule of Civil Procedure 56.1(b). Regardless, Church Mutual acknowledges in its Response to Chabad's Motion for Summary Judgment that Mr. Kies was the claims adjuster assigned to Chabad's claims. Resp. at 7.

[5]   Although Church Mutual purports to dispute this fact as "a small snapshot of a document outside of context," Pl.'s Resp. Facts ¶ D, it does not, and cannot, genuinely dispute that Chabad accurately quoted Mr. Kies's Report, see id.; Kies Report at 3, ECF No. 59-1 at 2. As such, the Court deems this fact undisputed.

On August 1, 2025, Chabad filed a Motion for Summary Judgment on the Issue of Coverage ("Chabad's Motion"). ECF No. 59. Church Mutual filed a Response, ECF No. 69, to which Chabad filed a Reply, ECF No. 77.

On August 14, 2025, Church Mutual filed the instant Corrected Consolidated Motion for Summary Judgment, seeking summary judgment on Chabad's counterclaims for a declaratory judgment regarding coverage, breach of contract, bad faith, statutory violations, and Chabad's request for punitive damages. ECF No. 65. Chabad filed a Response, ECF No. 71, to which Church Mutual filed a Reply, ECF No. 81.

On September 23, 2025, the Court issued an Order granting Chabad's Motion and denying in part and deferring ruling in part on Church Mutual's Motion ("First Summary Judgment Order"). ECF No. 83. Specifically, the Court found that Chabad's building was "very obviously" not "vacant" under the unambiguous terms of the Policy, id. at 9, and therefore Chabad was entitled to summary judgment on the issue of coverage as to both fires, id. at 13-14. The Court deferred ruling on Church Mutual's Motion with regard to the other issues and ordered the Parties to attend a settlement conference before a magistrate judge. Id.

The settlement conference occurred on November 21, 2025, but the Parties did not settle. See ECF No. 86.

On December 5, 2025, Church Mutual filed a Notice of Tender stating that the previous day, "it hand-delivered to counsel for Chabad of New Mexico . . . a check made payable to Chabad in the amount of $599,822.58, which represents the undisputed amounts due to Chabad for the subject damage to its property under the applicable insurance policy." ECF No. 87.

On December 9, 2025, the Court issued an Order to Show Cause why the statutory violations alleged in Counterclaim III should not be dismissed in part for failure to state a claim

4

("Order to Show Cause"). ECF No. 89. On December 16, 2025, Chabad filed a Response, ECF No. 92, to which Church Mutual filed a Reply, ECF No. 93.

On January 8, 2026, the Court issued an Order Quashing the Order to Show Cause, finding that Counterclaim III plausibly alleged violations of the New Mexico Insurance Code, and specifically violations of N.M. Stat. §§ 59A-16-20(B), (D), (E), and (G), and a violation of the Unfair Practices Act, and specifically a violation of N.M. Stat. Ann. § 57-12-2(D)(17). ECF No. 94.

## III. Legal Standard

Rule 56 of the Federal Rules of Civil Procedure allows a court to grant summary judgment when the evidence submitted by the parties establishes that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant meets this burden, the nonmovant is required to point the court to record evidence of facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-52 (1986). A fact is "material" if under the substantive law it is essential to the proper disposition of the claim. Id. at 248. "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998).

The nonmoving party cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment. See Pueblo Neighborhood Health Ctrs., Inc. v. Losavio, 847 F.2d 642, 649 (10th Cir. 1988). Rather, the nonmovant must "go beyond the pleadings and designate specific

5

facts so as to make a showing sufficient to establish the existence of an element essential to [their] case in order to survive summary judgment." Johnson v. Mullin, 422 F.3d 1184, 1187 (10th Cir. 2005) (quoting McKnight v. Kimberly Clark Corp., 149 F.3d 1125, 1128 (10th Cir. 1998)).

It is not the court's role to weigh the evidence or assess the credibility of witnesses in ruling on a motion for summary judgment. See Daniels v. United Parcel Serv., Inc., 701 F.3d 620, 627 (10th Cir. 2012), abrogated on other grounds by Muldrow v. City of St. Louis, 601 U.S. 346, 355 (2024). Rather, the court resolves all doubts against the movant, construes all admissible evidence in the light most favorable to the nonmovant, and draws all reasonable inferences in favor of the nonmovant. See Hunt v. Cromartie, 526 U.S. 541, 551-52 (1999); see also Garrison v. Gambro, Inc., 428 F.3d 933, 935 (10th Cir. 2005). However, summary judgment may nevertheless be granted where "the evidence is merely colorable, or is not significantly probative." Liberty Lobby, 477 U.S. at 249-50 (internal citations omitted).

## IV. Discussion

Church Mutual seeks summary judgment on Chabad's counterclaim for breach of contract (Counterclaim II), Mot. at 8-14, Chabad's counterclaim for bad faith insurance conduct and statutory violations (Counterclaim III), id. at 14-21, and Chabad's request for punitive damages, id. at 21-25.[6] Church Mutual's Motion does not directly address Counterclaim IV to the extent it alleges fraud and misrepresentation.

### a. Counterclaim II: Breach of Contract

In Counterclaim II, Chabad alleges that Church Mutual breached the Policy "by failing and refusing to pay for the damages and losses to Chabad's building and personal property caused by

---

[6] As discussed in Section II, the Court granted Chabad summary judgment as to Counterclaim I in its First Summary Judgment Order, ECF No. 83 at 14, which the Court hereby adopts.

fires in December 2022 and March 2023[,]" Countercl. ¶ 57, ECF No. 8 at 13, and "by failing and refusing to provide the insurance coverage requested, reasonably expected by, and owed to Chabad[,]" id. ¶ 58.

In its Motion, Church Mutual groups together its arguments for Counterclaim I (Declaratory Judgment – Coverage) and Counterclaim II (Breach of Contract). ECF No. 65 at 8. It argues that because Church Mutual does not owe Chabad coverage for any of the damage to the Property, it did not breach the Policy by failing to pay Chabad for its damages and losses. Id. at 13.

However, the Court concluded it its First Summary Judgment Order that Church Mutual owes coverage for loss or damage to the Property caused by or resulting from the December 2022 and March 2023 fires. ECF No. 83 at 13-14. Consequently, the Court concludes that Church Mutual is not entitled to summary judgment on Chabad's breach of contract counterclaim.[7] Cf. N.H. Ins. Co. v. TSG Ski & Golf, LLC, 128 F.4th 1337, 1352 (10th Cir. 2025) (affirming district court's order concluding that because the insurer owed no coverage under the policies, the insurer was entitled to summary judgment on the insured's breach of contract counterclaim).

    **b.**    **Counterclaim III: Bad Faith Insurance Conduct and Violations of the New Mexico Insurance Code and Unfair Practices Act**

Counterclaim III alleges a claim for bad faith insurance conduct and violations of the New Mexico Insurance Code, N.M. Stat. Ann. § 59A-16-1, et seq., and violations of New Mexico's

---

[7] The Court notes that on December 5, 2025, after the Court granted Chabad summary judgment on the issue of coverage, Church Mutual "hand-delivered to counsel for Chabad of New Mexico . . . a check made payable to Chabad in the amount of $599,822.58, which represents the undisputed amounts due to Chabad for the subject damage to its property under the applicable insurance policy." ECF No. 87. Church Mutual has not argued that this tender of payment mooted Counterclaim II. And, as the Notice of Tender suggests, Counterclaim II prays for amounts that are apparently still in dispute, including "incidental and consequential damages, damages for Church Mutual's bad faith, misrepresentations and statutory violations, punitive damages, costs, attorneys fees, [and] pre- and post-judgment interest[.]" ECF No. 8 at 14.

Unfair Practices Act, N.M. Stat. Ann. § 57-12-1, et seq.  Counterclaims ¶¶ 69-93, ECF No. 8 at 15-18.

### 1. Bad faith conduct

Church Mutual argues that its failure to provide coverage cannot constitute bad faith conduct because whether the "Vacancy" provision precludes coverage is "fairly debatable" and reasonably in dispute.  Mot. at 15-17 (citing, inter alia, NMRA, Civ. UJI 13-1702; United Nuclear Corp. v. Allendale Mut. Ins. Co., 709 P.2d 649 (N.M. 1985), Revocable Tr. Agreement of Randall S. Ellis & Teri L. Ellis v. State Farm Fire & Cas. Co., 614 F. Supp. 3d 963 (N.D. Okla. 2022)).  It further argues that it cannot be found to have committed bad faith by delaying its investigation, id. at 17-18, and filing this declaratory judgment action, id. at 19.[8]

---

[8] Church Mutual also argues that it cannot be held liable for bad faith conduct for renewing the Policy. Mot. at 19-21.  However, Counterclaim III does not allege that Church Mutual engaged in bad faith conduct by renewing the Policy.  Rather, Counterclaim IV alleges that Church Mutual engaged in fraud and misrepresentation by renewing the Policy with the "Vacancy" provision and "with full knowledge of the condition and contents of the building," thereby "intentionally, recklessly and/or negligently [leading] Chabad to reasonably expect that it had insurance coverage for its building and personal property in Rio Rancho."  Countercl. ¶ 95, ECF No. 8 at 19.  Although Counterclaim IV alleges that this conduct constitutes "bad faith[,]" id. ¶ 95, it is not included in the bad faith insurance cause of action in Counterclaim III.  And Respondents did not move for summary judgment on Counterclaim IV.

Regardless, to the extent such a finding is necessary, the Court finds that a reasonable jury could conclude, based on the Report of Chabad's expert, Stuart Setcavage, that Church Mutual engaged in bad faith conduct when it renewed Chabad's policy with the "Vacancy" provision.  For context, it is undisputed that in August 2021—while the Policy was in effect—Chabad made a claim for vandalism under the Policy (that is otherwise not at issue in this lawsuit).  Pl.'s Facts ¶ 11; Def.'s Resp. Facts ¶ 11.  Three days later, on August 9, 2021, Church Mutual advised Chabad of the Vacancy loss condition, reporting that it "may be applicable to your claim."  Pl.'s Facts ¶ 12; Def.'s Resp. Facts ¶ 12.  On September 17, 2021, after investigating Chabad's claim, Church Mutual advised that it was unable to identify coverage for the claim, noting that the subject properties "were reported as vacant for a period of more than two years."  Pl.'s Facts ¶ 13; Def.'s Resp. Facts ¶ 13.  In his Report, Mr. Setcavage opined:

> Church Mutual investigated claims for each occurrence; the vandalism in July 2021, and the arsons in December 2022 and March 2023. Although Church [Mutual] has refused to pay any claims based upon its vacancy clause, the policy renewed in June 2022, after the first reported loss but before the arsons.
>
> Church Mutual failed to cancel the policy mid-term after the first denial. Upon renewal in June 2022, Church Mutual failed to either send a notice of non-renewal or otherwise place conditions at this insured location. Knowing that it had denied a claim based on vacancy, its underwriters neither insisted that the status change nor cancelled the policy.

8

In its Response, Chabad discusses coverage and bad faith together because "coverage is intertwined with bad faith[.]" Resp. at 9. Chabad argues that summary judgment on Counterclaim III is improper because it has presented evidence that Church Mutual engaged in bad faith conduct and violated the New Mexico Insurance Code and Unfair Practices Act. Id. at 9-22. Specifically, Chabad argues that its expert, Stuart Setcavage, submitted a Report in which he opines that there was an "insufficient basis to deny payment under the coverage afforded." Id. at 9 (citing Setcavage Report at 7, ECF No. 64-1).

In its Reply, Church Mutual argues that by asserting that "coverage is intertwined with bad faith," Chabad is essentially admitting "that the entirety of the claim for bad faith by Chabad is Church Mutual's failure to extend coverage to Chabad in this circumstance." Reply at 8. Church Mutual maintains that it cannot be held liable for bad faith conduct because there is a legitimate dispute as to whether the "Vacancy" provision precludes coverage, and therefore whether Church Mutual is obligated to provide coverage. Id. at 8. It further maintains that filing this declaratory judgment action cannot be deemed bad faith. Id. at 9 (citations omitted). Church Mutual wholly fails to address Mr. Setcavage's expert Report.[9]

---

> Instead, Church Mutual accepted full premium payments knowing that it would never pay a claim. Even though Church Mutual knew about the use and the personal property contents of the building when the policy was renewed, and its frequent status of being unused, its underwriters accepted the risk in exchange for the premium. Moreover, upon renewal in 2022, Church [Mutual] gladly accepted the risk knowing it would never pay a claim. Offering what it knew or should have known was illusory coverage is outrageous conduct in my professional opinion.

ECF No. 64-1 at 7-8; see also id. at 10-11. Based on Mr. Setcavage's expert opinion, the Court finds that a reasonable jury could conclude that Church Mutual's 2022 renewal of the Policy with the "Vacancy" provision constitutes bad faith conduct. Cf. Haygood, 453 P.3d at 1242-43 (observing that conduct other than a refusal to pay may establish bad faith insurance conduct, and collecting cases).

[9] Church Mutual separately filed a Motion to Exclude the Testimony of S. Setcavage, ECF No. 64, which the Court denied following a February 4, 2026 hearing on the Motion. ECF No. 97.

"In New Mexico, '[w]hether express or not, every contract imposes upon the parties a duty of good faith and fair dealing in its performance and enforcement. Broadly stated, the covenant requires that neither party do anything which will deprive the other of the benefits of the agreement.'" Immanuel Presbyterian Church of Albuquerque v. Church Mut. Ins. Co., No. 1:20-cv-00878-KWR-KRS, 2022 WL 4079399, at *6 (D.N.M. Sept. 6, 2022) (quoting Salas v. Mountain States Mut. Cas. Co., 202 P.3d 801, 805 (N.M. 2009)). "The purpose of the implied covenant is to make 'effective the agreement's promises.'" Id. (quoting Azar v. Prudential Ins. Co. of Am., 68 P.3d 909, 925 (N.M. 2003)). "The duty arises when there is an existing underlying contract, but notably, it cannot override the express terms of an integrated written contract." Id. (citing Melnick v. State Farm Mut. Auto. Ins. Co., 749 P.2d 1105, 1109-10 (N.M. 1988)). "The key principle underlying the covenant of good faith in an insurance contract is that the insurer treat the interests of the insured equally to its own interests." Id. (quoting City of Hobbs v. Hartford Fire Ins. Co., 162 F.3d 576, 582 (10th Cir. 1998)).

"A party will breach that duty when through bad faith or wrongful intentional conduct the 'party seeks to prevent the contract's performance or to withhold its benefits from the other party.'" Id. (quoting City of Hobbs, 162 F.3d at 582).

> To establish a claim for bad faith, Plaintiff must show one of the following: (1) Defendant did not deal fairly with Plaintiff; (2) Defendant's reasons for refusing to pay were frivolous or unfounded, (3) Defendant did not act reasonably under the circumstances to conduct a fair evaluation of coverage; or (4) Defendant failed to act honestly and in good faith in the performance of an insurance contract.

Id. (citing Progressive Cas. Ins. Co. v. Vigil, 413 P.3d 850, 857 (N.M. 2018); NMRA, Civ. UJI 13-1702). "[A] bad faith claim need not depend on the existence of coverage." Albuquerque Ambulatory Eye Surgery Ctr. LLC v. Transp. Ins. Co., 566 F. Supp. 3d 1178, 1196 (D.N.M. Oct. 12, 2021) (quoting Haygood v. United Servs. Auto. Ass'n, 453 P.3d 1235, 1241 (N.M. Ct. App.

10

2019)). An insured "might establish bad faith in a variety of ways—whether by proving [the insurer] failed to deal fairly in handling the claim, failed to conduct a fair investigation, or failed to fairly evaluate coverage, among other possibilities." Haygood, 453 P.3d at 1242 (citations omitted).

Here, there is evidence from which a reasonable jury could conclude that Church Mutual's failure to promptly provide coverage constitutes bad faith conduct. Specifically, Mr. Setcavage's Report states:

> Church Mutual is attempting to redefine factors not set forth in the policy it had underwritten and sold to this policyholder. Church Mutual now wants vacant to mean unused.
>
> Claim professionals are trained to know that the plain meaning of an insurance policy will prevail unless its terms somehow violate public policy. Further, insurance policies are contracts of adhesion and, therefore, any ambiguity in that contract is to be construed in favor of the insured. Church Mutual is the author of this policy contract and it failed to include a more comprehensive definition of "vacancy" it now wants to impose.
>
> Obviously, in property claims, commercial buildings are often unoccupied, different from a house. However, unoccupied, or unused, does not necessarily mean vacant. Accordingly, based upon the known facts of this claim and the policy language, the property does not meet the policy definition of vacancy, so there is an insufficient basis to deny payment under the property coverage afforded.

ECF No. 64-1 at 7. Mr. Setcavage's Report concludes:

> The policy language always prevails and controls the administration of claims except in the relatively rare instances the policy language conflicts with public policy, which is not the case here. Accordingly, the denials, non-payment, or delayed payment of these claims are done so without a reasonable basis in my professional opinion.
>
> Although many companies choose not to define 'vacancy,' Church Mutual chose to specify exactly what it means by 'vacancy' in its policy. Applying other considerations not in that definition after a claim is reported is not the proper way to handle claims and is inherently unfair to insurance consumers.
> . . .

> Insurance companies must investigate claims promptly, thoroughly and fairly. Church mutual did not meet this basic standard. Further, industry standards require insurers to adopt <u>and implement</u> reasonable standards for the investigation of claims. The purported investigation in this matter was woefully inadequate as is evidenced by the claim notes. In fact, the claim handling or investigation is indicia of a pre-determination to deny payment for these claims.
>
> Industry standards specifically prohibit insurers from misrepresenting pertinent facts or policy provisions relating to coverages at issue. In the case at hand, Church Mutual is trying to redefine what the specific policy language holds.
>
> Industry standards further prohibit insurers from failing to affirm or deny coverage of claims of insureds within a reasonable time after proof of loss requirements under the policy have been completed and submitted by the insured. It is my understanding Church Mutual has never issued a denial letter, nor has it affirmed coverage.
>
> Industry standards require insurers to attempt in good faith to effectuate prompt, fair and equitable settlements of an insured's claims in which liability [for its payment under the terms of the contract] has become reasonably clear. Church Mutual has not made any good faith attempt to settle these claims even though the clear terms of the policy language indicate payment is due and owing.

<u>Id.</u> at 9-10. Based on Mr. Setcavage's expert opinion, the Court finds that a reasonable jury could conclude that Church Mutual's failure to promptly provide coverage constitutes bad faith conduct, as alleged in Counterclaim III. <u>See</u> <u>Immanuel Presbyterian</u>, 2022 WL 4079399, at *7-8 (rejecting Church Mutual's argument that the plaintiff could not establish a bad faith failure to pay its claim because Church Mutual "had <u>some reason</u> for its denial," and finding that the plaintiff had presented sufficient evidence that Church Mutual's failure to pay the claim was frivolous and unfounded inasmuch as it constituted a "'failure to exercise care for the interests of the insured, an arbitrary or baseless refusal to pay, lacking support in the language of the policy or the circumstances of the claim'") (quoting <u>Sloan v. State Farm Mut. Auto. Ins. Co.</u>, 85 P.3d 230, 237 (N.M. 2004)); <u>see also</u> <u>Sugartown United Pentecostal Church Inc. v. Church Mut. Ins. Co.</u>, No. 23-30072, 2024 WL 62947, at *7 (5th Cir. Jan. 5, 2024) (finding that there was sufficient

12

evidence—vis-à-vis a "battle of the experts"—from which the jury could reasonably conclude that Church Mutual engaged in statutory bad faith insurance conduct under Louisiana Law when it failed to timely tender payment under the policy).

However, the Court finds that Church Mutual is entitled to summary judgment to the extent Counterclaim III alleges that Church Mutual engaged in bad faith conduct by failing "to promptly . . . investigate . . . Chabad's claims." Countercl. ¶ 73, ECF No. 8 at 15; see also id. ¶ 74 ("Church Mutual failed to timely investigate, . . . Chabad's claims for the December 2022 and March 2023 losses."). Chabad made a claim for damages caused by the first fire on or about December 28, 2022. Pl.'s Facts ¶ 17; Def.'s Resp. Facts ¶ 17. It is undisputed that Church Mutual began investigating the first fire claim on January 10, 2023. Pl.'s Facts ¶ 22; Def.'s Resp. Facts ¶ 22. Chabad made a claim for damages caused by the second fire on March 5, 2023. Acknowledgment of Claim (Mar. 7, 2023), ECF No. 65-12. Church Mutual began investigating the second fire claim on March 8, 2023. Kies Dep. at 84:4 – 85:19, ECF No. 65-15. Chabad provides no argument and cites no evidence supporting its claim that Church Mutual delayed its investigation of the claims. Accordingly, the Court will grant Church Mutual summary judgment on Counterclaim III to the extent it alleges bad faith conduct premised on a delayed investigation.

Finally, the Court finds that Church Mutual is entitled to summary judgment to the extent Counterclaim III alleges that Church Mutual engaged in bad faith conduct by filing this declaratory judgment action. The Court has found no prior New Mexico case holding that an insurer can be held liable for bad faith insurance conduct for filing a declaratory judgment action. Church Mutual cites cases from other jurisdictions holding that, generally, an insurer may not be held liable for bad faith conduct for filing a declaratory judgment action. Mot. at 19 (citing Chavers v. Nat'l Sec. Fire & Cas. Co., 405 So. 2d 1, 10 (Ala. 1981); Cay Divers, Inc. v. Raven, 812 F.2d 866, 870 (3d

13

Cir. 1987)). Although it is probable that filing a declaratory judgment can be considered bad faith if done for "an improper or illegitimate purpose," Int'l Surplus Lines Ins. Co. v. Univ. of Wyo. Rsch. Corp., 850 F. Supp. 1509, 1527 (D. Wyo. 1994), Chabad has cited no evidence in support of such a finding. Indeed, the only mention of this issue in Chabad's Response is in the "Conclusion" section, which states, without citation to authority: "Filing a dec action may be bad faith when done for delay or when refusal to pay is unfounded." ECF No. 71 at 24. This half-hearted argument is insufficient to carry Chabad's burden of establishing a genuine issue of material fact as to whether Church Mutual engaged in bad faith conduct by filing this declaratory judgment action.

In sum, the Court **DENIES** Church Mutual's Motion for Summary Judgment to the extent Counterclaim III alleges Church Mutual engaged in bad faith conduct by failing to promptly provide coverage, and **GRANTS** Church Mutual's Motion for Summary Judgment to the extent Counterclaim III alleges Church Mutual engaged in bad faith conduct by delaying its investigation and filing this lawsuit.

### 2. Violation of the New Mexico Insurance Code and Unfair Practices Act

Counterclaim III alleges that Church Mutual violated the Unfair Claims Practices provision of the New Mexico Insurance Code, N.M. Stat. Ann. § 59A-16-20. See Countercl. ¶¶ 69-93; see also Order Quashing Order to Show Cause at 2-3, ECF No. 94 (finding that Counterclaim III plausibly alleges violations of N.M. Stat. Ann. § 59A-16-20(B), (D), (E), and (G)). Specifically, it alleges that

> Church Mutual's violations of the New Mexico Insurance Code include, but are not limited to, the following:
>
> . . .

14

      b. Church Mutual failed to acknowledge and act reasonably promptly upon communications with respect to claims from Chabad arising under the Policy;

      . . .

      d. Church Mutual has unreasonably delayed notifying Chabad whether its claims will be paid or denied;

      e. Church Mutual failed to attempt, in good faith, to effectuate a prompt, fair settlement of Chabad's claims in which liability was reasonably clear; [and]

      f. By its conduct, delays, and inaction, Church Mutual compelled its insured, Chabad, to institute litigation to recover amounts due to Chabad under the Policy[.]

Id. ¶ 80, ECF No. 8 at 16-17; see also id. ¶¶ 13, 15-17, 20-21, 25, 34-35, 47, 49, 50-52, 57-58, 61, 91.

Counterclaim III also alleges that Church Mutual violated New Mexico's Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-2(D)(17) and 57-12-3, by "failing to deliver the quality or quantity of insurance coverage for which Chabad contracted and paid." Countercl. ¶ 86 see also id. ¶¶ 6-34; Order Quashing Order to Show Cause at 3-4, ECF No. 94.

In its Motion for Summary Judgment, Church Mutual argues only that because it is "fairly debatable" whether the "Vacancy" provision precluded coverage for Chabad's claims, its failure to pay the claim cannot be "deemed bad faith or any violation of the New Mexico Insurance Code, nor Unfair Practices Act." Mot. at 17. Chabad argues that Mr. Setcavage's Report supports the statutory violations alleged in Counterclaim III. Resp. at 22. In its Reply, Church Mutual does not address the alleged statutory violations or Mr. Setcavage's Report.

The Court finds that a reasonable jury could conclude that Church Mutual violated the New Mexico Insurance Code and New Mexico's Unfair Practices Act. As relevant here, the Insurance Code prohibits an insurer from:

15

> B. failing to acknowledge and act reasonably promptly upon communications with respect to claims from insureds arising under policies;
>
> . . .
>
> D. failing to affirm or deny coverage of claims of insureds within a reasonable time after proof of loss requirements under the policy have been completed and submitted by the insured;
>
> E. not attempting in good faith to effectuate prompt, fair and equitable settlements of an insured's claims in which liability has become reasonably clear; [and]
>
> . . .
>
> G. compelling insureds to institute litigation to recover amounts due under policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds when such insureds have made claims for amounts reasonably similar to amounts ultimately recovered[.]

N.M. Stat. Ann. §§ 59A-16-20(B), (D), (E), and (G). The Unfair Practices Act prohibits "[u]nfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce[,]" N.M. Stat. Ann. § 57-12-3, and defines "unfair or deceptive trade practice" to include "failing to deliver the quality or quantity of goods or services contracted for[,]" N.M. Stat. Ann. § 57-12-2(D)(17).

Mr. Setcavage's Report supports a finding that Church Mutual violated these statutory provisions. First, he opines that Church Mutual's handling of Chabad's claim—and specifically, it's nonpayment of the claim based on an unreasonable interpretation of the "Vacancy" provision—is "inherently unfair to insurance consumers." Setcavage Report at 9. This supports a finding that Church Mutual is liable for "failing to deliver the quality or quantity of goods or services contracted for[.]" N.M. Stat. Ann. § 57-12-2(D)(17). He further opines:

> Insurers should not compel insureds to institute litigation in order to recover amounts due under a policy of insurance. Rather the standard requires insurers to pay claims promptly once liability for its payment under the terms of the contract becomes reasonably clear.

16

> Insurance companies must investigate claims promptly, thoroughly and fairly. Church mutual did not meet this basic standard. Further, industry standards require insurers to adopt <u>and implement</u> reasonable standards for the investigation of claims. The purported investigation in this matter was woefully inadequate as is evidenced by the claim notes. In fact, the claim handling or investigation is indicia of a pre-determination to deny payment for these claims.
>
> Industry standards specifically prohibit insurers from misrepresenting pertinent facts or policy provisions relating to coverages at issue. In the case at hand, Church Mutual is trying to redefine what the specific policy language holds.
>
> Industry standards further prohibit insurers from failing to affirm or deny coverage of claims of insureds within a reasonable time after proof of loss requirements under the policy have been completed and submitted by the insured. It is my understanding Church Mutual has never issued a denial letter, nor has it affirmed coverage.
>
> Industry standards require insurers to attempt in good faith to effectuate prompt, fair and equitable settlements of an insured's claims in which liability [for its payment under the terms of the contract] has become reasonably clear. Church Mutual has not made any good faith attempt to settle these claims even though the clear terms of the policy language indicate payment is due and owing.

ECF No. 64-1 at 10. These opinions support a finding that Church Mutual is liable under N.M. Stat. Ann. §§ 59A-16-20(B), (D), (E), and (G).

Therefore, the Court **DENIES** Church Mutual's Motion for Summary Judgment to the extent Counterclaim III alleges Church Mutual violated the New Mexico Insurance Code and New Mexico's Unfair Practices Act.

    **c.**    **Punitive damages**

Finally, Church Mutual seeks summary judgment on Chabad's request for punitive damages. Mot. at 21-22 (citing NMRA, Civ. UJI 13-1827). It argues that Plaintiff cannot demonstrate that Church Mutual is directly liable for punitive damages because "there is no evidence of any culpable mental state on the part of Church Mutual." <u>Id.</u> at 22. It further argues that it cannot be held vicariously liable for punitive damages based solely on the acts of an

17

employee because "there is no evidence to establish that any Church Mutual agent or employee acted with the culpable mental state" and "Chabad cannot show that any individual who allegedly acted with the requisite mental state was acting in a managerial capacity[.]" Id. at 24.

Chabad initially argues that Church Mutual is relying on the incorrect Uniform Jury Instruction for punitive damages, and that United States District Judge Kea Riggs corrected this error when Church Mutual previously attempted to use it in Immanuel, 2022 WL 4079399, at *10 (rejecting Church Mutual's argument that NMRA, Civ. UJI 13-1827 is the appropriate jury instruction on punitive damages and finding that "UJI 13-1718 is the applicable instruction in insurance bad faith claims"). Resp. at 22. It further argues that the New Mexico Supreme Court confirmed that UJI 13-1718 is the appropriate instruction in bad faith insurance cases. Id. at 23 (citing Sloan, 85 P.3d at 232). Chabad argues that "Claim Director Graybill is a 'culpable actor' who, acting in his 'managerial capacity', refused to pay Chabad's claims for reasons that are unreasonable under the terms of the Policy[,]" and, as such, the jury should decide whether punitive damages are appropriate. Id.

In its Reply, Church Mutual argues that punitive damages are improper under any standard because "there is no showing that Church Mutual's behavior was frivolous or unfounded." ECF No. 81 at 10.

Under New Mexico law, "a punitive-damages instruction should be given to the jury in every common-law insurance-bad-faith case" based on a failure to pay—i.e., "those arising from a breach of the insurer's duty to timely investigate, evaluate, or pay an insured's claim in good faith"—"where the evidence supports a finding . . . that the insurer failed or refused to pay a claim for reasons that were frivolous or unfounded[.]" Sloan, 85 P.3d at 232. "An insurer's frivolous or unfounded refusal to pay is the equivalent of a reckless disregard for the interests of the insured,

18

and a dishonest or unfair balancing of interests is no less reprehensible than reckless disregard, which has historically justified an award of punitive damages." Id. The New Mexico Supreme Court directs courts to issue UJI 13-1718 in bad faith insurance cases, under which "punitive damages may only be awarded when the insurer's conduct was in reckless disregard for the interests of the plaintiff, or was based on a dishonest judgment, or was otherwise malicious, willful, or wanton." Id.

Here, at a minimum, there is evidence from which a reasonable jury could conclude that Church Mutual's failure to promptly pay Chabad's claims "was in reckless disregard for the interests of [Chabad], or was based on a dishonest judgment, or was otherwise malicious, willful, or wanton." Id. Specifically, Mr. Setcavage's Report supports a finding that Church Mutual's failure to promptly pay Chabad's claims was based on a dishonest interpretation of the "Vacancy" provision. See Setcavage Report at 7 ("Church Mutual is attempting to redefine factors not set forth in the policy it had underwritten and sold to this policyholder. Church Mutual now wants vacant to mean unused."); id. at 10 ("Industry standards specifically prohibit insurers from misrepresenting pertinent facts or policy provisions relating to coverages at issue. In the case at hand, Church Mutual is trying to redefine what the specific policy language holds."). The Court finds this sufficient for a punitive damages jury instruction. See Immanuel, 2022 WL 4079399, at *11 (finding that whether Church Mutual's conduct warranted an award of punitive damages under New Mexico law was an issue for the jury); Am. Nat'l Prop. & Cas. Co. v. Cleveland, 293 P.3d 954, 961 (N.M. Ct. App. 2012) (finding that because there was sufficient evidence to support a bad faith insurance claim, there was no basis to reverse punitive damages award).

19

## IV. Conclusion

Based on the foregoing, the Court concludes that Counterclaim II survives summary judgment; Counterclaim III survives summary judgment to the extent it alleges certain violations of the New Mexico Insurance Code and Unfair Practices Act and to the extent it alleges Church Mutual engaged in bad faith conduct by failing to promptly provide coverage; Church Mutual is entitled to summary judgment as to Counterclaim III to the extent it alleges Church Mutual engaged in bad faith conduct by delaying its investigation and filing this lawsuit; and Church Mutual's Motion for Summary Judgment on the issue of punitive damages is denied. Finally, the Court observes that Church Mutual did not move for summary judgment on Counterclaim IV, so that counterclaim survives in toto.

Therefore, it is **HEREBY ORDERED** that Church Mutual's Corrected Consolidated Motion for Summary Judgment, ECF No. 65, is **GRANTED IN PART AND DENIED IN PART** consistent with this Order.

**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE