**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

CHURCH MUTUAL INSURANCE
COMPANY, S.I.,

Plaintiff/Counter-Defendant,

v.

Case 1:24-cv-00090-MIS-SCY

CHABAD OF NEW MEXICO,

Defendant/Counter-Claimant.

# ORDER ON DAMAGES ISSUES

THIS MATTER is before the Court sua sponte. In several submissions filed in anticipation of trial, Plaintiff/Counter-Defendant Church Mutual Insurance Company, S.I. ("Church Mutual") and Defendant/Counter-Claimant Chabad of New Mexico ("Chabad") have raised issues concerning the valuation of damages and the evidence that may be offered in support thereof. This Order resolves the main issue concerning the valuation of damages.

## I. Relevant background

On June 2, 2022, Church Mutual renewed an insurance policy issued to Chabad that covered certain real property Chabad owns in Rio Rancho, New Mexico ("Policy," ECF No. 1-1). The Policy contains a loss condition for "Vacancy," which states, in relevant part:

> If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage, we will:
>
> a. Not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:
>
> (1) Vandalism;
>
> . . .

> A building is vacant when it does not contain enough of your personal property to conduct customary operations. . . .

ECF No. 1-1 at 44-45. The Policy also contains "Loss Payment" and "Valuation" provisions that describe how Church Mutual will determine the value of loss or damage to covered property. Id. at 44-45. Those provisions state, in relevant part:

> 4. Loss Payment.
>
> a. In the event of loss or damage covered by this Coverage Part, at our option, we will either:
>
> (1) **Pay the value of lost or damaged property**;
>
> (2) **Pay the cost of repairing or replacing the lost or damaged property** . . . ;
>
> (3) Take all or any part of the property at an agreed or appraised value; or
>
> (4) Repair, rebuild or replace the property with other property of comparable kind and quality, subject to b. below.
>
> **We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition** in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.
>
> . . .
>
> 7. Valuation
>
> a. Replacement Cost. If Replacement Cost is shown in the Declarations Page as applicable to Covered Property, we will determine the value of Covered Property in the event of loss or damage as follows:
>
> (1) At Replacement Cost (without deduction for depreciation) as of the time of loss or damage, except as provided under c. below.
>
> (2) You may make a claim for loss or damage covered by this insurance on an "Actual Cash Value" basis instead of on a

Replacement Cost basis. In the event you elect to have loss or damage settled on an "Actual Cash Value" basis:

(a) We will then determine the value of Covered Property on an "Actual Cash Value" basis when applying the Coinsurance Condition;

(b) You may still make a claim on a Replacement Cost basis if you notify us of your intent to do so within 180 days after the date of the loss or damage.

(3) **We will not pay on a Replacement Cost basis for any loss or damage**:

(a) **Until the lost or damaged property is actually repaired or replaced**; and

(b) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage;

(4) We will not pay more for loss or damage on a Replacement Cost basis than the least of:

(a) The Limit of Insurance applicable to the lost or damaged property;

(b) The cost to replace "on the same premises" the lost or damaged property with other property:

1) Of comparable material and quality; and

2) Use for the same purpose; or

(c) The amount you actually spend that is necessary to repair or replace the lost or damaged property.

**The term "on the same premises" is a limitation on the amount of loss or damage we will pay. It does not require you to replace lost or damaged property at the same site.**

. . .

b. "Actual Cash Value." If "Actual Cash Value" is shown in the Declarations Page as applicable to Covered Property, we will determine the value of Covered Property in the event of loss or damage at "Actual Cash Value" as of the time of loss or damage[.]

Id. at 45 (emphases added). "Replacement Cost" is shown on the Declarations Page as applicable to the Covered Property, and limits coverage to $1,412,000. Id. at 9.

On December 28, 2022, there was an act of arson committed on a building covered by the Policy.[1] On March 5, 2023, there was a second act of arson committed on the same building. Chabad submitted claims under the Policy to Church Mutual for both fires.

On January 18, 2023, Church Mutual sent Chabad a reservation of rights letter acknowledging Chabad's claim for the December 28, 2022 fire, stating that it was investigating the claim, and indicating that the Policy's "Vacancy" loss condition may be applicable to the claim. On July 10, 2023, Church Mutual sent Chabad's attorney a reservation of rights letter stating that Church Mutual's investigation of both claims "remains ongoing, and no coverage position has been made."

On December 12, 2023, the claims adjuster assigned to investigate the fires submitted a report to Church Mutual's Property Claims' Director. See ECF No. 59-1. The Report indicates that Church Mutual investigated the claims under a reservation of rights, quotes the "Vacancy" loss condition, and states that "while the building was not actively being used, there remained sufficient contents in the structure for the Insured to continue their normal operations." Id. at 2. However, Church Mutual never agreed to cover the loss.

Instead, on January 29, 2024, Church Mutual instituted this diversity action seeking a declaratory judgment that it owes no duty to cover Chabad's claims because the property was

---

[1] Under New Mexico law, the term "vandalism" in an insurance contract encompasses acts of arson. Battishill v. Farmers Alliance Ins. Co., 127 P.3d 1111, 1112 (N.M. 2006).

"vacant" for more than sixty consecutive days before the acts of arson, and therefore no coverage is owed pursuant to the Policy's "Vacancy" loss condition. See Compl. ¶¶ 1-6, 12-20, ECF No. 1.

On March 25, 2024, Chabad filed an Answer to the Complaint and counterclaims for a declaratory judgment that Church Mutual owes coverage for Chabad's claims (Count I), breach of contract (Count II), insurance bad faith and violations of the New Mexico Insurance Code and Unfair Practices Act (Count III), and fraud and misrepresentation (Count IV). ECF No. 8. Chabad alleges that "[b]ecause of Church Mutual's delays and failure to provide coverage, Chabad was required to demolish its fire damaged building in Rio Rancho." Id. ¶ 35. "The cost of replacing or rebuilding Chabad's building because of damage caused by the December 2022 and March 2023 fires exceeds $2.6 million." Id. ¶ 36.

On August 1, 2025, Chabad filed a Motion for Summary Judgment on the Issue of Coverage ("Chabad's Motion"). ECF No. 59. On August 14, 2025, Church Mutual filed a cross-Motion seeking summary judgment on Chabad's counterclaims for a declaratory judgment regarding coverage, breach of contract, bad faith, statutory violations, and Chabad's request for punitive damages. ECF No. 65 ("Church Mutual's Motion").

On September 23, 2025, the Court issued an Order granting Chabad's Motion and denying in part and deferring ruling in part on Church Mutual's Motion. ECF No. 83.[2] Specifically, the Court found that Chabad's building was "very obviously" not "vacant" under the unambiguous terms of the Policy, id. at 9, and therefore Chabad was entitled to summary judgment on the issue of coverage as to both fires, id. at 13-14.

---

[2] Church Mut. Ins. Co. v. Chabad of N.M., Case 1:24-cv-00090-MIS-SCY, 2025 WL 2711085 (D.N.M. Sep. 23, 2025).

On December 5, 2025, Church Mutual filed a Notice of Tender stating that the previous day, "it hand-delivered to counsel for Chabad of New Mexico . . . a check made payable to Chabad in the amount of $599,822.58, which represents the undisputed amounts due to Chabad for the subject damage to its property under the applicable insurance policy." ECF No. 87. On February 17, 2026, Chabad filed a Statement Concerning Church Mutual's Notice of Tender, stating that "it is Chabad's position that Church Mutual owes more than $599,822.58 in contract damages for the subject damage to Chabad's property under the terms of the applicable Replacement Cost insurance Policy." ECF No. 101 at 1.

On February 10, 2025, the Court issued an Order Granting in Part and Denying in Part Church Mutual's Motion. ECF No. 98.[3] Specifically, the Court found that:

- Counterclaim II (breach of contract) survives summary judgment;
- Counterclaim III survives summary judgment to the extent it alleges:
  - (a) Church Mutual engaged in bad faith by failing to promptly provide coverage;
  - (b) Certain violations of the New Mexico Insurance Code, and specifically N.M. Stat. Ann. §§ 59A-16-20(B), (D), (E), and (G);
  - (c) Certain violations of the Unfair Practices Act, and specifically N.M. Stat. Ann. §§ 57-12-2(D)(17) and 57-12-3; and
- The claim for punitive damages survives summary judgment.

Id. at 8-20. The Court further observed that because Church Mutual did not move for summary judgment on Counterclaim IV (fraud and misrepresentation), that counterclaim survives in totality. Id. at 20.

---

3 Church Mut. Ins. Co. v. Chabad of N.M., Case 1:24-cv-00090-MIS-SCY, 2026 WL 369151 (D.N.M. Feb. 10, 2026).

Trial on the surviving counterclaims is scheduled to commence January 25, 2027. ECF No. 130. Church Mutual filed a Motion in Limine, ECF No. 116, to which Chabad filed a Response, ECF No. 128. Chabad filed a Motion in Limine, ECF No. 117, to which Church Mutual filed a Response, ECF No. 122. The Parties have also filed witness lists, exhibit lists, proposed jury instructions, deposition designations, and objections to the opposing parties' witness lists, exhibit lists, proposed jury instructions, and deposition designations. ECF Nos. 104-115, 118-121, 123-127.

## II. Discussion

A recurring issue in the Parties' pretrial submissions is whether Chabad is entitled to a Replacement Cost valuation under the Policy. Church Mutual argues that because the Policy states "[w]e will not pay on a Replacement Cost basis for any loss or damage. . . [u]ntil the lost or damaged property is actually repaired or replaced[,]" and Chabad never repaired or replaced the Rio Rancho building, Chabad is not entitled to a Replacement Cost valuation. See, e.g., Church Mutual's Mot. in Limine at 18, ECF No. 116; Church Mutual's Resp. to Chabad's Mot. in Limine at 12-13, ECF No. 122.

Chabad argues that it "wanted to repair its building[,]" "[i]t repeatedly told Church Mutual it wanted to repair its building[,]" "[t]he parties agree that the building could have been repaired[,]" "Chabad's building was eventually demolished, by order of the City of Rio Rancho, because Church Mutual would not provide coverage it owed to get the repairs done[,]" and "[u]nder the circumstances here, Church Mutual was contractually obligated to pay the costs to repair/replace the building and personal property damaged and destroyed by the fires without deduction for depreciation." Chabad's Resp. to Church Mutual's Mot. in Limine at 13, ECF No. 128. It argues that because Church Mutual materially breached the contract by failing to promptly provide

coverage, Chabad was excused from performing its obligations under the Policy. Id. (citing N.M. UJI Civil No. 13-823).[4]

Under materially similar circumstances, United States Magistrate Judge Laura Fashing, sitting as the presiding judge pursuant to the Local Rules of this District, concluded that an insured could seek replacement cost value on its claims against an insurer for breach of contract, common law bad faith, and violation of New Mexico's Unfair Insurance Practices Act. Corrales Ventures, LLC v. Union Ins. Co., 1:20-cv-00872-LF-SCY, 2023 WL 402124, at *1-4 (D.N.M. Jan. 25, 2023). Judge Fashing observed that New Mexico substantive law applied, and "[b]ecause there is no controlling state decision on this issue, the Court must attempt to predict what the New Mexico Supreme Court would do if presented with the question." Id. at *1 (citing Wade v. EMCASCO Ins. Co., 483 F.3d 657, 665 (10th Cir. 2007)). Judge Fashing predicted the New Mexico Supreme Court would adopt the reasoning of the Nebraska Supreme Court in D & S Realty, Inc. v. Markel Insurance Co., 816 N.W.2d 1 (Neb. 2012), which the Court will describe in detail.

In D & S Realty, a building sustained water damage after its pipes burst. 816 N.W.2d at 4. The property was insured by a policy that had a "loss payment" clause virtually identical to the Policy at issue in this case, which stated that the insurer, at its option:

---

[4] New Mexico's Uniform Jury Instruction Civil No. 13-823, titled "Breach of contract; failure to perform[,]" provides:

> ______________________ (name of party asserting material breach) contends that there has been a material breach of the contract. A material breach occurs when a party fails to do something that is so important to the contract that the failure to perform that obligation defeats an essential purpose of the parties in making the agreement.
>
> ______________________ (name of party asserting material breach) has the burden of proving that ______________________ (name of opposing party) committed a material breach.
>
> Material breach by one party excuses the other party from performing its obligations under the contract.

> would either (1) pay the value of lost or damaged property, (2) pay the cost of repairing or replacing the lost or damaged property, (3) take all or any part of the property at an agreed or appraised value, or (4) repair, rebuild, or replace the property with other property of like kind and quality.

Id. at 5. The property owner purchased the optional additional coverage for "replacement cost." Id. As in this case, the policy's "replacement cost" provision stated that the insurer "will not pay on a replacement cost basis for any loss or damage: (1) Until the lost or damaged property is actually repaired or replaced; and (2) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage." Id.

The property owner filed a claim with its insurer, but the insurer denied coverage based on the policy's "Vacancy" loss condition. Id. The property owner sued the insurer for breach of contract, seeking replacement cost damages. Id. at 6. The property owner acknowledged that it had not yet repaired or replaced the damaged property, but "pled that it was [the insurer's] denial of coverage, in breach of its policy obligations, which caused [the property owner] to be unable to repair or replace the property." Id. The insurer moved in limine to prevent the property owner from introducing evidence of replacement costs because the property owner failed to satisfy the repair/replace condition to replacement cost coverage; in fact, the property owner had sold the building. Id. at 8. Ultimately, the trial court permitted the property owner to present evidence on replacement costs. Id. The property owner testified at trial that he had not conducted repairs or replacements because he lacked the money to do so. Id. The insurer moved for a directed verdict on the grounds that the property owner "presented evidence of only replacement costs, which it could not recover because it had not actually repaired or replaced the damaged property." Id. The trial court denied the motion. Id. A jury found in favor of the property owner and awarded

replacement costs. Id. at 9. The insurer appealed arguing, inter alia, that the trial court erred in denying its motion for a directed verdict. Id.

The discrete issue before the Supreme Court of Nebraska was "whether a good faith denial of coverage which is ultimately determined to be in breach of contract excuses performance of a repair/replace condition." Id. at 11. The court noted that "[w]hen the insurer, in breach of the insurance contract, denies liability for the insured's loss, most courts conclude that such denial may excuse the insured's duty under the repair/replace condition to replacement cost coverage[,]" and "most courts frame the issue in terms of the doctrine of prevention." Id. at 13 (citations omitted).

> The doctrine of prevention states that where a promisor prevents, hinders, or renders impossible the occurrence of a condition precedent to his or her promise to perform, the promisor is not relieved of the obligation to perform and may not invoke the other party's nonperformance as a defense when sued upon the contract. "In short, under the doctrine of prevention, where a party to a contract is the cause of the failure of the performance of the obligation due him or her, that party cannot in any way take advantage of that failure."

Id. (quoting 13 Samuel Williston, A Treatise on the Law of Contracts § 39:3 (Richard A. Lord ed., 4th ed. 2000)). The court held that the doctrine of prevention is not limited to bad faith acts, and that a good faith denial of liability can excuse an insured's duty to perform the repair/replace condition. Id. at 13-15.

The court further held that whether the insurer prevented the insured from performing the repair/replace condition is a question of fact upon which the insured bears the burden of proof. Id. at 15. Importantly,

> The doctrine of prevention does not require proof that the condition would have occurred "but for" the wrongful conduct of the promisor, but requires only that the promisor's conduct contributed materially to the nonoccurrence of the condition. However, if the promisee could not or would not have performed the condition, or

> it would not have happened whatever had been the promisor's conduct, the condition is not excused.

Id. at 16.

The court further held that the excusal of the repair/replacement condition is generally temporary, and the insured is required to satisfy the condition—if it is still possible to do so—once the issue of liability is determined. See id. at 16-18 (discussing Smith v. Mich. Basic Prop. Ins. Ass'n, 490 N.W.2d 864, 868 (Mich. 1992)). It found that

> [i]n most cases involving good faith denial of coverage, the interests of the parties would be adequately protected by granting a judgment to the insured for actual cash value and, in addition, a declaratory judgment that the insured will be reimbursed for the difference between actual cash value and any repair/replacement costs actually conducted within the time stated in the policy, running from the time of the judgment.

Id. at 19. However, "if the delay in determining the insurer's liability materially contributed to a situation where the insured can no longer perform the condition after the coverage dispute is resolved, then the condition will be absolutely excused." Id. at 18. In other words, where repair or replacement is impossible—for example, because the insured sold the property or the local government will not permit the insured to rebuild on the property—and the insured can prove to the trier of fact that the insurer's "general denial of liability and the resulting litigation materially contributed to this impossibility, [the insured] may recover replacement costs without ever actually repairing or replacing the damaged property." Id.

In Corrales Ventures, Judge Fashing noted that "the clear trend of authority on this particular issue is that when an insurer hinders an insured's ability to repair or replace its property by refusing to pay a claim or underpaying a claim, the failure to repair or replace the property may be excused, at least until liability is determined." 2023 WL 402124, at *3 (citing Riverside Apartments of Cocoa, LLC v. Landmark Am. Ins. Co., 505 F. Supp. 3d 1293, 1311-13 (M.D. Fla.

2020); Utica Mut. Ins. Co. v. Cincinnati Ins. Co., 362 F. Supp. 3d 265, 268-71 (E.D. Pa. 2019); VJ, LLC v. State Auto Prop. & Cas. Ins. Co., No. 14-2919, 2016 WL 11602001, at *8-9 (W.D. Tenn. Aug. 3, 2016); Fitzgerald v. Am. Fam. Mut. Ins. Co., Case No. 6:14-cv–497-AA, 2015 WL 5896139, at *6 (D. Or. Oct. 6, 2015); Green v. Allstate Ins. Co., Case No. 3:11-cv-00210-TMB, 2015 WL 10939709, at *3-4 (D. Alaska Mar. 26, 2015); Stephens & Stephens XII, LLC v. Fireman's Fund Ins. Co., 180 Cal. Rptr. 3d 683, 696 (Cal. Ct. App. 2014)). "Because of New Mexico's adherence to the prevention doctrine and the general trend of authority," Judge Fashing predicted that the New Mexico Supreme Court would adopt the approach taken by the Supreme Court of Nebraska in D & S Realty. Id. This Court agrees.

This is not a case where repair or replacement is impossible; even if Chabad does not still own the property, the Policy does not require Chabad to rebuild at the same location. See ECF No. 1-1 at 45 ("The term 'on the same premises' is a limitation on the amount of loss or damage we will pay. It does not require you to replace lost or damaged property at the same site."). Consequently, Chabad may recover replacement cost value if it proves that Church Mutual breached the insurance contract and Chabad was unable to repair or replace the property because of Church Mutual's non-payment. Corrales Ventures, 2023 WL 402124, at *3. If the jury finds for Chabad on these two questions, Chabad then will have an opportunity to "be reimbursed for the difference between actual cash value and any repair/replacement costs actually conducted within the time stated in the policy, running from the time of the judgment." Id. (quoting D & S Realty, 816 N.W. at 19).

Pursuant to the Policy's Valuation provision, the jury will be asked to determine actual cash value as of the date of loss. Id. Chabad may present evidence regarding the cost of repairing or replacing the property, but that evidence would only be relevant to whether Church Mutual's

refusal to provide coverage prevented Chabad from making the necessary repairs or replacement. Id. The jury will not award replacement cost value damages. Id. Instead, if the jury awards actual cash value damages, Chabad then will receive "a declaratory judgment that [Chabad] will be reimbursed for the difference between actual cash value and any repair/replacement costs actually conducted within the time stated in the policy, running from the time of the judgment." Id. (quoting D & S Realty, 816 N.W. at 19).

## III. Conclusion

The Court will resolve the Parties' motions in limine and objections to witness lists, exhibit lists, proposed jury instructions, and deposition designations consistent with this Order at the pretrial conference.

Margaret Strickland

**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE